**James G. DUFFY, Trustee for Canny Trucking Co., Inc., Plaintiff–Appellant,**

v.

**BMC INDUSTRIES, INC., doing business as Buckbee Mears Cortland Co., Defendant–Appellee.**

**No. 1517, Docket 91–7133.**

United States Court of Appeals, Second Circuit.

Argued June 14, 1991.

Decided June 28, 1991.

---

Joseph L. Steinfeld, Jr., Washington, D.C. (Robert B. Walker, John T. Siegler, Sims, Walker & Steinfeld, Washington, D.C., on the brief), for plaintiff-appellant.

Robert J. Tracey, New York City (William C. Sippel, Oppenheimer Wolff & Donnelly, New York City, on the brief), for defendant-appellee.

Before FEINBERG, NEWMAN and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

James G. Duffy, bankruptcy trustee for Canny Trucking Co., Inc. ("Canny"), brings this interlocutory appeal to challenge the November 16, 1990, order of the District Court for the Northern District of New York (Howard G. Munson, Judge) staying a suit by Canny against BMC Industries, Inc. for motor freight undercharges. The order also refers the action to the Interstate Commerce Commission for a determination of the reasonableness of Canny's filed tariff rate. The carrier contends that the shipper may not delay a suit to collect the filed tariff rate and obtain the ICC's determination of the reasonableness of the rate prior to payment. Without resolving the broad issue of whether in all circumstances a shipper's administrative challenge to the reasonableness of a rate must await payment, an issue on which the circuits are divided, we conclude that in the circumstances of this case the stay and the referral to the ICC were an appropriate exercise of the District Court's discretion.

## Facts

BMC ships raw materials from the Port of New York/New Jersey to its manufacturing facility in Cortland, New York. Prior to May 1985, BMC was using Craven Corporation as its motor common carrier. Craven was charging BMC approximately $559 per container. Canny offered to transport BMC's goods at a price of $550 per container, with a 35 percent discount for the few shipments moving from Cortland to the Port. BMC agreed to this rate, shipped with Canny, was billed at the agreed rate, and paid the bills. Two years later, Canny filed a voluntary petition in bankruptcy under Chapter 11, a proceeding subsequently converted into a Chapter 7 liquidation. In the course of the bankruptcy proceeding, an audit was undertaken, and it disclosed that BMC owed Canny $456,180 for freight shipped between May 1985 and September 1987, representing the difference between the rate negotiated between BMC and Canny and what Canny

alleged was its applicable tariff filed with the ICC.

The carrier brought this suit in 1989, pursuant to 49 U.S.C. §§ 10741(a), 10761, 10762 (1988), to recover the unpaid freight charges. Included in BMC's answer was the defense that Canny and BMC had negotiated a rate for shipments below the filed tariff rate, that BMC had relied on Canny to file the negotiated rate, and that it was an "unreasonable practice" for Canny to seek to recover the difference between the negotiated rate and the filed tariff rate. BMC alleged that it had been billed only for the negotiated rate and had paid the bills.

BMC initially obtained from the District Court an order staying the suit and referring to the ICC the "unreasonable practice" defense. *See Delta Traffic Service, Inc. v. Appco Paper & Plastics Corp.*, 893 F.2d 472 (2d Cir.), *vacated,* — U.S. —, 111 S.Ct. 425, 112 L.Ed.2d 409 (1990). Thereafter the Supreme Court invalidated the ICC's negotiated rate policy and precluded the "unreasonable practice" defense to a suit to collect unpaid freight charges. *See Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* — U.S. —, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In light of *Maislin,* BMC sought leave to withdraw its "unreasonable practice" defense and to substitute an "unreasonable rate" defense, pursuant to 49 U.S.C. §§ 10701, 10704 (1988). The District Court granted BMC leave to amend its answer, continued the stay previously entered, and modified the reference to the ICC so that the issue before the Commission would be the reasonableness of Canny's filed tariff rate. The District Court certified to this Court for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988) its order staying the suit and making the reference to the Commission. We accepted the appeal.

## Discussion

In rejecting the "unreasonable practice" defense to a suit to collect freight charges according to a filed tariff, the Supreme Court stated, "The filed rate doctrine, however, contains an important caveat: the filed rate is not enforceable if the ICC finds the rate to be unreasonable." *Maislin,* 110 S.Ct. at 2767 (citations omitted). *Maislin* has created uncertainty as to whether, in a carrier's suit to collect undercharges, a shipper may assert as a defense that the applicable tariff rate is unreasonable and obtain a stay of the suit and a reference to the ICC for a determination of whether the rate is unreasonable. Much of the language of *Maislin* emphasizes the force of the filed rate doctrine, suggesting that the carrier has an immediately enforceable claim to the filed rate unless and until the Commission determines that the rate is unreasonable. However, in seeming contradiction to a strict application of the filed rate doctrine, the Court, after precluding consideration of an "unreasonable practice" defense, stated, "The issue of the reasonableness of the tariff rates is open for exploration on remand." *Maislin,* 110 S.Ct. at 2767 n. 10.

There is disagreement among the circuits as to whether a shipper may contest the reasonableness of a filed tariff prior to making payment according to its terms. *Compare Delta Traffic Service, Inc. v. Transtop, Inc.,* 902 F.2d 101 (1st Cir.1990) (permitting administrative challenge prior to payment), *modified, id.* at 112 *with Supreme Beef Processors, Inc. v. Yaquinto,* 864 F.2d 388 (5th Cir.1989) (prohibiting administrative challenge prior to payment). Since the *Maislin* decision, several district courts have referred to the ICC tariff challenges raised as a defense in underpayment collection cases, *see In re Sharm Express, Inc.,* 122 B.R. 999 (D.Minn.1991); *Overland Express, Inc. v. International Multifoods,* 765 F.Supp. 1386 (S.D.Ind.1990); *Brown v. Manville Products Corp.,* No. C–89–2386–VRW (N.D.Cal. Nov. 15, 1990) (available on LEXIS, GENFED library, Dist. file), and this course was followed after the remand in *Maislin, Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* No. 85–0021–CV–W–JWO–5, 1990 WL 264536 (W.D.Mo. Nov. 21, 1990) (available on LEXIS, GENFED library, Dist. file).

The issue that divides the First and Fifth Circuits has emerged in the shadow of three decisions of the Supreme Court that

preceded *Maislin* by many years, *Crancer v. Lowden,* 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077 (1942), *United States v. Western Pacific R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), and *T.I.M.E. Inc. v. United States,* 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). In *Crancer,* railroad carriers filed suit in the District Court seeking the difference between the filed rate and a lower rate that had been paid. The suit was filed while there was pending before the ICC the shippers' complaint that the filed rate was unreasonable. The shippers sought to have the court action stayed pending the administrative proceeding. The District Court denied the stay and entered judgment for the carrier. In affirming, the Supreme Court ruled that the District Court had not exceeded its discretion in denying the stay because "[t]he issue of the reasonableness of the rates was not open to the District Court." *Crancer,* 315 U.S. at 635, 62 S.Ct. at 765. That the Supreme Court was not merely upholding the primary jurisdiction of the ICC but was invoking the filed rate doctrine to require payment until such time as the Commission declared the tariff unreasonable is indicated by the Court's observation that " '[u]ntil changed, tariffs bind both carriers and shippers with the force of law.' " *Id.* (quoting *Lowden v. Simonds–Shields–Lonsdale Grain Co.,* 306 U.S. 516, 520, 59 S.Ct. 612, 614, 83 L.Ed. 953 (1939)).

Amplifying this thought, the Court explained:

> Nothing involved in the pending administrative proceedings before the Interstate Commerce Commission was essential to the determination of the issue in this suit. If the trial judge had, in the exercise of his discretion, continued the trial of the cause until such time as the Commission had passed upon the reasonableness of the rate, the delay might have made it impossible for the carrier to produce the witnesses who had made the inspection of the shipments. On the other hand, the petitioners [shippers] suffered no hardship as a result of the trial court's insistence on proceeding with the trial. If petitioners pay the judgment in this case, and the Commission should, in the still pending proceeding, decide to modify the tariffs, petitioners can obtain a complete remedy by way of reparation. *Id.* at 636, 62 S.Ct. at 765 (citation omitted).

Though the holding in *Crancer* is only that the District Court did not exceed its discretion in *denying* a stay and proceeding to adjudicate the underpayment claim, the strong implication of the Supreme Court's language is that a shipper has an obligation, enforceable in a district court, to pay according to the filed tariff until such time as the Commission acts to declare the tariff unreasonable. That implication casts considerable doubt on the authority of a district court to *grant* a stay and refer tariff challenges to the Commission prior to payment.

In *Western Pacific,* three rail carriers sued the United States, as shipper, to collect unpaid rail freight charges. The United States had paid only at a rate specified in a lower tariff, claimed by the Government to be applicable. In defending against the claim for payment at the higher tariff rate claimed to be applicable by the carrier, the United States asserted both that the lower tariff applied and that the higher tariff, if applicable, was unreasonable and sought referral of the issue of reasonableness to the Commission. The trial court (the Court of Claims) rejected referral on the ground that though the suit was timely under the six-year limitations period of the Tucker Act, 28 U.S.C. § 2501 (1952), the defense of unreasonableness of the tariff was barred by the two-year limitations period of section 16(3) of the Interstate Commerce Act, 49 U.S.C. § 16(3)(a) (1952).

The Supreme Court reversed, ruling that since the suit was timely under the Tucker Act, all available defenses, including tariff unreasonableness, could be asserted. The major focus of the opinion was on primary jurisdiction, the Court emphasizing the need to have the Commission consider both which tariff applied and the reasonableness of the higher tariff, if applicable. The clear implication of the decision is that the Court of Claims should refer the tariff issues, including tariff unreasonableness,

to the Commission, notwithstanding lack of payment of the amount in dispute. *See Western Pacific*, 352 U.S. at 75 n. 18, 77 S.Ct. at 171 n. 18. Shortly thereafter, the Court made this implication unmistakable by citing *Western Pacific* as authority for the proposition that in another suit by a carrier to collect unpaid freight charges from the United States, the Court of Claims had acted properly in suspending proceedings "to enable the parties to have the Interstate Commerce Commission pass on the reasonableness of the rates." *Pennsylvania R. Co. v. United States*, 363 U.S. 202, 203, 80 S.Ct. 1131, 1132, 4 L.Ed.2d 1165 (1960).

Though *Western Pacific* had cited *Crancer* for the unexceptional proposition that a court need not refer a tariff construction issue to the Commission if the Commission has previously construed the particular tariff, 352 U.S. at 69, 77 S.Ct. at 167, the Court made no reference to *Crancer* on the issue of whether a court may stay a collection suit and refer tariff issues to the Commission prior to payment. In requiring district court referral of tariff reasonableness issues to the Commission, notwithstanding lack of payment, the First Circuit read *Western Pacific* as support for just such a rule. *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d at 104. That might be a correct reading of *Western Pacific*, though that opinion's failure to reckon with the seemingly contrary implication of *Crancer* leaves room for doubt. Moreover, it is possible that *Western Pacific* was according the United States, as shipper, an exception to the filed rate doctrine. Two circumstances point in that direction. First, the Court noted that Congress had given the United States the right, not available to other shippers, to offset claimed overpayments against a carrier's subsequent bills. *Western Pacific*, 352 U.S. at 60–61 n. 2, 77 S.Ct. at 163 n. 2 (citing 49 U.S.C. § 66 (1952)). Second, the Court pointed out that the United States, unlike other shippers, may invoke estoppel against a carrier to prevent collection of a rate higher than a quoted rate. *Id.* at 76 & n. 20, 77 S.Ct. at 171 & n. 20 (citing 49 U.S.C. § 22 (1952)).

The third Supreme Court opinion bearing on our issue is *T.I.M.E. Inc. v. United States, supra*. In that decision the Court ruled that in a suit to collect unpaid freight charges under the Motor Carrier Act of 1935, a shipper could not assert a defense of unreasonable rates. This firm application of the filed rate doctrine, however, was specifically predicated on the absence of a reparations remedy in the Motor Carrier Act, 359 U.S. at 474, 79 S.Ct. at 910; *see id.* at 475, 79 S.Ct. at 910 (distinguishing *Western Pacific* on this ground), with no reference to the decision in *Crancer*, which had implied that the availability of reparations is irrelevant. Once Congress remedied this omission by providing motor shippers with a reparations remedy like that previously available to rail shippers, *see* Pub.L. No. 89–170, § 6, 79 Stat. 651 (1965) (amending 49 U.S.C. § 304a(2), (5)) (repealed and recodified at 49 U.S.C. §§ 11705(b)(3), 11706(c)(2) (1988)), it is arguable that *T.I. M.E.* has been legislatively overruled. *See Maislin*, 110 S.Ct. at 2776–77 n. 12 (Stevens, J., dissenting); *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d at 106.

■ Though *Crancer, Western Pacific, T.I.M.E.*, and *Maislin* leave us somewhat uncertain as to whether an unreasonable rate defense may generally be asserted by a private shipper prior to full payment, we think that BMC was entitled to assert the defense here because of the fact that Canny did not bill BMC for the charges now claimed to be due until more than two years after the shipments, by which time BMC's right to contest the rates before the Commission and seek reparations had expired, at least with respect to most of the shipments. Whatever the force of the filed rate doctrine and whether or not a shipper must normally pay before challenging the reasonableness of a rate, we think the doctrine need not be applied so strictly as to permit a carrier to delay billing beyond the two-year period of limitations governing the shipper's reparations remedy, 49 U.S.C. § 11706(c)(2) (1988), and then preclude an unreasonable rate defense in the carrier's subsequent suit brought within the three-year period of limitations governing a carri-

**358**

er's claim for unpaid freight, *id.* § 11706(a). It will be time enough to revisit the issue that currently divides the First and Fifth Circuits when a shipper who has not paid asserts an unreasonable rate defense to a suit by a carrier who has promptly billed for the freight alleged to be owing.

■ Having concluded that the District Court had discretion to stay the action and refer the issue of rate unreasonableness to the Commission, we are satisfied that the Court properly exercised its discretion on the showing made by BMC.

The order of the District Court is affirmed.