**LIFSCHULTZ FAST FREIGHT, INC., Plaintiff,**

**v.**

**RAINBOW SHOPS, INC., d/b/a Rainbow USA, Inc., Defendant.**

**No. 91 Civ. 2456 (MBM).**

United States District Court, S.D. New York.

Feb. 11, 1992.

James P. Anelli, Lindsey H. Taylor, Friedman Siegelbaum, New York City, for plaintiff.

Larsh B. Mewhinney, New York City, William J. Augello, Augello, Pezold & Hirschmann, P.C., Huntington, N.Y., for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant, Rainbow Shops, Inc., moves for an order referring certain issues to the Interstate Commerce Commission ("ICC") and to stay this case pending the ICC's resolution of those issues. For the reasons set forth below, the motion is denied.

### I

Plaintiff, Lifschultz Fast Freight, Inc., is a motor common carrier operating in interstate commerce pursuant to authority granted by the ICC. Between 1988 and 1990, plaintiff carried defendant's goods and now sues to collect unpaid freight charges in the amount of $83,153.15. (Amended Complaint ¶ 3)

The charges are "loss of discount" and "penalty" fees arising from defendant's late payments in violation of plaintiff's tariff. (Amended Complaint ¶ 3; Zottoli Aff. ¶ 7) Defendant argues that the "penalties hidden in Lifschultz's tariff" are unreasonable and, therefore, unenforceable under 49 U.S.C. § 10701(a). (Zottoli Aff. ¶ 7) Defendant also alleges that plaintiff's rates and practices are inconsistent with ICC regulations and that defendant was fraudulently induced to enter the shipping contract. In addition, defendant raises five counterclaims alleging fraudulent inducement, damage to its goods in the course of shipment, and violation of the Interstate Commerce Act's tariff, reasonableness, and discrimination provisions.

Defendant now moves to stay this litigation and refer to the ICC the issues raised by its unreasonable rate defense. It argues that such issues are within the ICC's primary jurisdiction.

### II

■ The doctrine of primary jurisdiction applies when an issue arises in the course of litigation which, pursuant to a regulatory scheme, is within the special competence of an administrative agency. In such instances, the litigation is stayed pending resolution of the issues by the appropriate administrative body. *United States v.*

*Western Pacific R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The question raised here is whether staying this litigation and referring the reasonableness issue to the ICC is consistent with the Interstate Commerce Act.

■ The purpose of the Act is to prevent rate discrimination by common carriers. The Act provides that a "common carrier ... may not charge or receive from a person a different compensation ... for a service rendered, ... than it charges or receives from another person for performing a like or contemporaneous service." 49 U.S.C. § 10741(a) (1982 ed.). In order to prevent discrimination, all shippers and carriers must adhere to the rates contained in the carrier's tariffs filed with the ICC. A "carrier may not charge or receive a different compensation ... than [*sic*] the rate specified in [its] tariff." 49 U.S.C. § 10761(a). The Act also regulates the level of rates, stating that a "rate ... or practice related to transportation or service ... must be reasonable." 49 U.S.C. § 10701(a) (1982 ed.). The ICC is charged with enforcement of the Act, and is responsible for determining whether a carrier's rates are reasonable. 49 U.S.C. § 11701 (1982 ed.); *see Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 440–42, 27 S.Ct. 350, 355–56, 51 L.Ed. 553 (1907).

In cases such as this, tension arises between the tariff and reasonableness provisions. In order to prevent discrimination, tariffs must be strictly enforced. *See Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). However, it is uncertain whether in a suit to collect freight charges the tariff must be enforced before the ICC decides whether it is reasonable. If so, a court must enforce the tariff rate, without referring the reasonableness issue to the ICC. On the other hand, if the shipper may withhold payment of freight charges, a court may invoke the doctrine of primary jurisdiction, await the ICC's determination, and then enforce the rate deemed reasonable by the ICC. The circuits disagree as to which approach is proper.

Recently, in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Court addressed the question of whether a carrier's unfair practices may excuse a shipper from paying the filed rate. Before *Maislin,* the Court had held repeatedly that the only rate to be charged and received is the filed rate. *See e.g., Southern Pacific Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 352, 102 S.Ct. 1815, 1825, 72 L.Ed.2d 114 (1982); *Keogh v. Chicago & Northwestern R. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922); *Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495. For instance, in *Maxwell* Justice Hughes wrote: "Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext." 237 U.S. at 97, 35 S.Ct. at 495. In *Maislin,* the carrier and shipper negotiated rates below those filed with the ICC. Thereafter, the carrier filed for bankruptcy protection and, citing the filed rate doctrine, sued for the difference between the tariff and the negotiated rates. The shipper argued, and the ICC found, that rebilling at the tariff rate constituted an unreasonable practice and the shipper need pay only the negotiated rate. The Supreme Court reversed:

> For a century, this Court has held that the Act, as it incorporates the filed rate doctrine, forbids as discriminatory the secret negotiation and collection of rates lower than the filed rate. By refusing to order collection of the filed rate solely because the parties had agreed to a lower rate, the ICC has permitted the very price discrimination the Act by its terms seeks to prevent.

110 S.Ct. at 2768 (citing *Armour Packing Co. v. United States,* 209 U.S. 56, 81, 28 S.Ct. 428, 435, 52 L.Ed. 681 (1908)).

*Maislin's* emphasis on the force of the filed rate doctrine makes it uncertain whether a shipper in effect may obtain a stay pending resolution of the question of the reasonableness of the carrier's rates or whether the filed rate doctrine requires payment of the filed rate regardless of the shipper's assertions of unreasonableness. That uncertainty is compounded by the Court's somewhat cryptic statement that although the unreasonable practice defense is unavailable: "The issue of the reasonableness of the tariff rates is open for exploration on remand." 110 S.Ct. at 2767 n. 10.

The Second Circuit considered the issue but did not decide it in *Duffy v. BMC Industries, Inc.,* 938 F.2d 353 (2d Cir.1991). There, the Second Circuit noted that *Maislin* "suggest[ed]" but did not specifically hold that "the carrier has an immediately enforceable claim to the filed rate unless and until the Commission determines the rate is unreasonable." *Id.* at 355. It then reviewed the three Supreme Court cases decided prior to *Maislin* which bear on the issue: *Crancer v. Lowden,* 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077 (1942), *United States v. Western Pacific R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), and *T.I.M.E. Inc. v. United States,* 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959).

In *Crancer v. Lowden,* the Supreme Court upheld the lower court's refusal to grant a stay in favor of an ICC hearing on the issue of reasonableness. The Second Circuit interpreted the holding in *Crancer* to be "only that the District Court did not exceed its discretion in *denying* a stay and proceeding to adjudicate the underpayment claim." *Duffy,* 938 F.2d at 356 (emphasis in original). However, *Duffy* noted that *Crancer* implies that the shipper is obligated to pay according to the tariff until the ICC declares the tariff unreasonable, and concluded that that "implication casts considerable doubt on the authority of a district court to *grant* a stay and refer tariff challenges to the Commission prior to payment." *Id.* (emphasis in original).

The *Duffy* court then turned to *United States v. Western Pacific R. Co., supra.* In *Western Pacific,* three carriers sued the United States for unpaid freight charges. The Supreme Court held that under the doctrine of primary jurisdiction the tariff issues were properly referred to the ICC. *Id.* at 75 n. 18, 77 S.Ct. at 171 n. 18. The Second Circuit questioned the force of *Western Pacific,* noting that *Western Pacific's* "failure to reckon with the seeming-

ly contrary implication of *Crancer* leaves room for doubt." *Duffy*, 938 F.2d at 357. Moreover, Judge Newman, writing for the panel, concluded that it was possible that the United States as shipper was accorded a special exemption from the filed rate doctrine. *Id.*

The final case reviewed in *Duffy* was *T.I.M.E. Inc. v. United States, supra.* In *T.I.M.E.* the Supreme Court held that a shipper could not assert an unreasonable rate defense. However, this holding was predicated on the absence of a reparations remedy in the Motor Carrier Act as it then existed. The Second Circuit concluded that because Congress has since passed a reparations remedy, *T.I.M.E.* may have been legislatively overruled. *See Duffy*, 938 F.2d at 357.

Based on its analysis of the cases, the *Duffy* court concluded that it is "somewhat uncertain as to whether an unreasonable rate defense may generally be asserted by a private shipper prior to full payment." *Id.* It then side-stepped the issue, holding that even if the filed rate doctrine applied, that would not foreclose referral in the circumstances presented in *Duffy*, where the carrier did not bill the shipper until after the two-year limitations period had run on the shipper's reparations remedy. The court assumed that as a result, application of the filed rate doctrine would "preclude an unreasonable rate defense in the carrier's subsequent suit brought within the three-year period of limitations governing a carrier's claim for unpaid freight." *Id.* This assumption appears to conflict with *Western Pacific*, which states: "[W]e do not think that the statute operates to bar reference to the Commission of questions raised by way of defense in suits which are themselves timely brought ... Only the clearest congressional language could force us to a result which would allow a carrier to recover unreasonable charges with impunity merely by waiting two years before filing suit." 352 U.S. at 71, 77 S.Ct. at 169. In any event, unlike *Duffy*, the case at hand involves "an unreasonable rate defense to a suit by a carrier who has promptly billed"; thus, the issue

avoided in *Duffy* must be addressed here. *Duffy*, 938 F.2d at 358.

The First Circuit held in favor of referral in *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101 (1st Cir.1990). In so holding, Judge Breyer stressed that although the Act requires fidelity to the tariff, it also requires that the filed rates be reasonable: " 'Shippers and travelers are charged with notice of the [filed rate], and they as well as the carrier must abide by it, *unless it is found by the Commission to be unreasonable.*' " *Id.* at 104 (quoting *Maxwell*, 237 U.S. at 97, 35 S.Ct. at 495) (emphasis added in *Delta Traffic*). He also relied on a broad reading of *Western Pacific*, which, he wrote, stands for the proposition that under the Act the ICC is to address all questions of reasonableness and for the courts to do so in each individual case would threaten the uniformity of rates. *Id.* at 104. Other courts have followed *Delta Traffic*. *See, e.g., Atlantis Express, Inc. v. Standard Transp. Services, Inc.*, 955 F.2d 529 (8th Cir.1992).

However, the reasons relied upon by Judge Breyer do not necessarily lead to the result reached in *Delta Traffic*. For instance, *Maxwell*, on which *Delta Traffic* relies, did not address the tension between assuring that rates are reasonable and enforcing tariffs as written, and, therefore, its holding does not mean necessarily that the reasonableness determination should precede payment of the filed rate. Moreover, even accepting Judge Breyer's broad reading of *Western Pacific*, the ICC's authority to decide questions of reasonableness does not compel a stay under the doctrine of primary jurisdiction so that the ICC can exercise that authority before payment. The ICC can review reasonableness in a reparations proceeding before or after the litigation to enforce the tariff. A court need not usurp the ICC's authority to decide the reasonableness issue regardless of whether or not the case is referred to the ICC before the tariff is enforced.

The Fourth and Fifth Circuits have held that a stay pending referral of the reasonableness issue is improper. The Fifth Circuit described the balance between the rea-

sonableness and tariff provisions as follows:

> [The Act] entails a balanced and coherent system for the payment and review of rates. The shipper is required to pay the filed rate at the time of shipment but may later seek review and reparations in the I.C.C. The carrier, on the other hand, receives assurance that the payment will not be delayed pending review; but the carrier must be prepared to reimburse amounts later found to be unreasonable.

*Southern Pacific Transp. Co. v. San Antonio,* 748 F.2d 266, 274 (5th Cir.1984); *In re Caravan Refrigerated Cargo, Inc.,* 864 F.2d 388, 391 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990).

In addition to citing the Fifth Circuit's description of the statutory scheme, the Fourth Circuit *In re Carolina Motor Express, Inc.,* 949 F.2d 107, 110 (4th Cir.1991), reasoned that permitting referral "would provide a strong incentive for shippers routinely to contest the validity of the carrier's rates in order to delay paying the carrier's filed rate." It also read Supreme Court precedent to hold that "carriers are entitled to receive the filed rate for their services immediately when due." 949 F.2d at 110 (citing *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe R. Co.,* 284 U.S. 370, 384, 52 S.Ct. 183, 184, 76 L.Ed. 348 (1932)).

██ I agree with the Fourth and Fifth Circuits that the Act requires adherence to the tariff, and that a stay pending referral of the reasonableness issue to the ICC is contrary to the provisions and purposes of the Act. Although it may seem unfair to hold a shipper to an unreasonable rate, the Supreme Court has said that the shipper is charged with knowledge of the rates listed in the tariff: "Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. The rule is undeniably strict, and it may work hardship in some cases, but it embodies the policy which has been adopted by Congress in regulation of interstate commerce in order to prevent unjust discrimination." *Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495. Therefore, under the Act the shipper is required to pay according to the tariff and cannot claim either ignorance or mistake as an excuse for non-payment. Nor should a shipper be permitted to raise unreasonableness as a defense to paying the filed rate. In addition to being charged with knowledge of the rates, presumably the shipper has voluntarily contracted with the carrier, has reviewed the tariff and has considered the rates of other carriers. The shipper has had an opportunity to consider the reasonableness of the tariff rate prior to contracting.

██ Moreover, the Act provides shippers with a specific remedy. If it is later discovered that the filed rates are unreasonable, the Act provides for "reparations" following a determination of unreasonableness by the ICC. 49 U.S.C. § 11704 (1982 ed.). The very characterization of the remedy in the statute—"reparations"—suggests a rule of pay first and sue later. Thus, the statutory scheme suggests that the only reasonable expectation by both carrier and shipper is that the tariff governs the transaction and its terms are immediately enforceable. *In re Caravan Refrigerated Cargo,* 864 F.2d at 391. "[I]t would be anomalous to allow the defendants, a further delay in paying the rates, of which they had been charged with knowledge from the beginning." *Carolina Motor Express,* 949 F.2d at 110.

Moreover, prohibiting referral will discourage negotiation of rates below the filed rate. If a shipper is aware that a carrier can enforce the filed rate at any time, it is less likely that the shipper will try to get the carrier to agree to evade the tariff. While a rule requiring immediate payment of the rates specified in the tariff will not eliminate such agreements, it will make them less attractive for shippers and thereby further the policy of eliminating rate discrimination.

For the reasons stated above, defendant's motion is denied.

SO ORDERED.