**BALTIMORE AND OHIO CHICAGO TERMINAL RAILROAD COMPANY, Plaintiff–Appellee,**

v.

**WISCONSIN CENTRAL LIMITED, Defendant–Appellant.**

No. 97–3484.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1998.

Decided Aug. 25, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 21, 1998.

Paul V. Esposito (argued), Douglas A. Lindsay, Lewis, Overbeck & Furman, Chicago, IL, Thomas M. Weithers, Central States Law Department, Des Plaines, IL, for Plaintiff–Appellee.

James A. Fletcher (argued), Oppenheimer, Wolff & Donnelly, Chicago, IL, Janet H. Gilbert, Wisconsin Central Limited, Rosemont, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

POSNER, Chief Judge.

This procedurally complicated lawsuit between two railroads began five years ago when BOCT filed a complaint in federal district court under the Interstate Commerce Act demanding that WCL, to which BOCT had rendered terminal services, pay it switching charges and railroad-car rental fees pursuant to a tariff for such services that BOCT had filed with the Interstate Commerce Commission. In its answer, WCL claimed both that BOCT's claim was barred by an agreement between the parties covering the services BOCT had rendered (an interchange agreement) and that the rate in the tariff that BOCT was suing on was unreasonable and discriminatory. When shortly afterward the parties appeared before the district judge to report on the status of the case, they agreed to mediation; it failed, and BOCT, which in response to

WCL's answer had denied that there was an enforceable interchange agreement, now moved to amend its complaint to add a claim of breach of contract based on the agreement and for a stay of proceedings pending arbitration of its contractual rights. The Interstate Commerce Act permits railroads to deal with their customers (which can include another railroad) either by tariffs, which are publicly announced take-it-or-leave-it form contracts, or by individually negotiated agreements. 49 U.S.C. §§ 10713, 10761 (1994 ed.); *Burlington Northern Ry. v. STB*, 75 F.3d 685, 687 (D.C.Cir.1996); *National Grain & Feed Ass'n v. United States*, 5 F.3d 306, 309 (8th Cir.1993). Because the interchange agreement incorporated the rates in the tariff that BOCT was also suing on, there were only two pertinent differences between BOCT's tariff claim—its original claim—and the contract claim based on the interchange agreement that it wanted to add by amending its complaint. First, the statute of limitations was ten years for the contract claim and only three years for the tariff claim (a feature of the agreement that favored BOCT). Second, there was a discrepancy between the description of the covered services in the tariff and in the agreement that WCL believed would preclude BOCT from seeking payment if the agreement trumps the tariff.

The ground on which BOCT asked for a stay pending arbitration of the contract claim was a clause in the interchange agreement requiring the parties to arbitrate any "irreconcilable disputes" arising under it. WCL opposed both the request for the stay, and the motion to amend the complaint, on the ground of undue delay. The judge disagreed with WCL's position, granted the motion to amend the complaint, but rather than staying the suit pending arbitration dismissed it in its entirety, though without prejudice to either party's reinstating any nonarbitrable claim or defense within thirty days after the arbitrators made their award. Yet while dismissing the suit, the judge purported to retain jurisdiction to confirm the award.

The parties proceeded to arbitration, which eventuated in an award to BOCT of some $20 million in damages (including interest) for breach of the interchange agreement. BOCT moved the district court to confirm the award and WCL moved to reinstate its defenses. The judge confirmed the award. He refused to reinstate two of the defenses on the ground that WCL had waived them by failing to present them to the arbitrators. He reinstated others but referred those to the Surface Transportation Board (successor to the Interstate Commerce Commission, which was abolished in 1996) in accordance with the doctrine of primary jurisdiction. The referred defenses are that BOCT's tariff violates the Interstate Commerce Act because it is unreasonable and discriminatory as applied to the services that BOCT rendered to WCL. The principal defense that the judge refused to reinstate (the other needn't be discussed) was that BOCT could not recover damages under the interchange agreement because of the filed-tariff doctrine, of which more anon. "Reinstatement" is a misnomer as applied to this defense, for WCL had never pleaded it before. Remember that WCL had originally sought to use the interchange agreement as a shield against BOCT's tariff claim, and it could hardly do so by arguing that the tariff preempted the agreement. It was a new defense, and the judge thought it should have been presented to the arbitrators. "Defense" is a misnomer too, because a claim that a tariff is invalid, when the claim is interposed in a suit by a carrier to collect the tariff charge, is technically a counterclaim. *Reiter v. Cooper*, 507 U.S. 258, 263, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). The distinction is a fine one, but it has bite, as we shall see.

It may seem odd that the district judge should have referred the challenge to the validity of the tariff to the STB while confirming the arbitrators' award. One might think that the award would moot BOCT's tariff claim by giving BOCT more than it could get under the tariff for the identical services covered by the board. Why, then, having confirmed the award, didn't the judge dismiss the rest of the suit? Because the arbitrators' award, and the district judge's order confirming it, was premised on the yet-to-be-determined validity of the tariff incorporated in the interchange agreement. If

the STB determines the tariff to be invalid, WCL will have a claim against BOCT, enforceable in this lawsuit, for the return of part or all of the arbitration award.

■ The judge certified his order confirming the arbitrators' award for an immediate appeal to us under Fed.R.Civ.P. 54(b) as a partial final judgment. This was a proper application of the rule, which authorizes the entry of a final, appealable judgment on a separate claim if there is no good reason to delay the appeal until the end of the entire litigation. The part of the case that remains in the district court, though stayed there pending consideration by the Surface Transportation Board, is WCL's claim that the tariff is invalid. The part of the case that the judge resolved is BOCT's contract claim. These are, believe it or not, separate claims. WCL's appeal does not challenge the arbitrators' interpretation of the agreement, but only the propriety of the judge's having referred the case to arbitration in light of BOCT's failure to request arbitration at the outset, and of his having deemed WCL's defense, based on the filed-tariff doctrine, to BOCT's contract claim waived because it could have been presented to the arbitrators. These entirely procedural issues do not overlap any of the issues in the STB proceedings, and so the resolved and retained claims are rightly regarded as separate claims within the meaning of Rule 54(b). See *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162 (7th Cir.1997), and cases cited there.

It is true that the arbitration award and so the order confirming it may as a practical matter be undone by the STB. But WCL's "defense" that the BOCT tariff is invalid is a counterclaim, and as such it can be treated as a separate claim for Rule 54(b) purposes, *Reiter v. Cooper*, 507 U.S. 258, 265, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); see also *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 9, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), provided that it is distinct in the sense of having only a minimum factual overlap with the plaintiff's claim. More than a technicality underlies this conclusion. The arbitration award is "conditional" in the loose sense that WCL may eventually get its mon-

ey back, but it is as an unconditional order to pay. The Interstate Commerce Act displays its solicitude for carriers by creating a mechanism by which their customers may be required to pay first and recoup later. This structure sets the stage for the use of Rule 54(b) illustrated by this case, as by *Reiter*. See also *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 624 (7th Cir.1995); *Hargrave v. Freight Distribution Service, Inc.*, 53 F.3d 1019, 1021 (9th Cir.1995).

■ That is one jurisdictional issue out of the way but there is another: whether the district judge had jurisdiction over the case when it came back to him after the arbitration. There is no doubt that he had jurisdiction over it when it was originally filed and that he was empowered by the Federal Arbitration Act to stay it pending arbitration. 9 U.S.C. § 3. The issuance of a stay, as distinct from an order of dismissal, implies that the proceeding in the court that issued the stay remains on the court's docket, albeit in a state of suspended animation. As long as the case remains before the court, the judge has the power to issue any order that is within his power to issue in a case of that sort. And that includes an order confirming an arbitration award when, as in this case, the agreement pursuant to which the parties' dispute (or some part of it) is being arbitrated is within the compass of the Federal Arbitration Act. See *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275–76, 52 S.Ct. 166, 76 L.Ed. 282 (1932); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 329–30 (7th Cir.1995); *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 850 (7th Cir.1983); *Prudential–Bache Securities, Inc. v. Fitch*, 966 F.2d 981, 989 (5th Cir.1992); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d Cir.1985).

The only thing that obscures this principle in the present case is the judge's action in dismissing the parties' claims while retaining jurisdiction to confirm the award. He should not have dismissed BOCT's claim, since if BOCT failed in the arbitration to obtain all the relief it was seeking it would want to proceed under the Interstate Commerce Act, the original and never-abandoned basis of its original complaint. But remember that the

judge dismissed BOCT's claim (and WCL's defenses) with leave to reinstate; and· if there is a·practical difference between such a disposition—especially when coupled with a purported retention of jurisdiction—and a stay, we can't find it. A dismissal with leave to reinstate is not appealable as a final order, as an ordinary dismissal would be and most stays would not be. *Otis v. City of Chicago,* 29 F.3d 1159, 1163 (7th Cir.1994); *Brill v. McDonald's Corp.,* 28 F.3d 633, 634 (7th Cir.1994). In other words, we treat a dismissal with leave to reinstate as if it were a stay. And so in this case, too, we shall look behind labels, construe "reinstate" to mean "reactivate," *Richmond v. Chater,* 94 F.3d 263, 268 (7th Cir.1996), and so interpret the district court's order as a stay rather than a dismissal. And this means that we won't have to consider the esoteric question tendered by the parties of whether the judge's order reinstating some of WCL's defenses enabled him to confirm the arbitrators' award in the exercise of his supplemental jurisdiction. 28 U.S.C. § 1367. But once again we urge district judges to eschew dismissals with leave to reinstate. See *Otis v. City of Chicago, supra,* 29 F.3d at 1163; *Adams v. Lever Bros. Co.,* 874 F.2d 393, 395–96 (7th Cir.1989); *Ohio River Co. v. Carrillo,* 754 F.2d 236, 238–39 (7th Cir.1985) (per curiam). This case is a further illustration that it is a confusing form of judgment.

■ We now consider whether the judge erred in allowing BOCT to demand arbitration as late as it did. The general rule is that a demand for arbitration, like the invocation of a forum-selection clause or any other claim of improper venue, *Sharpe v. Jefferson Distributing Co.,* 148 F.3d 676, 679–80 (7th Cir.1998); *Frietsch v. Refco, Inc.,* 56 F.3d 825, 830 (7th Cir.1995), must be made as early as possible so that the other party can know in what forum he has to proceed. *Cabinetree of Wisconsin Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir.1995). But like other rules of venue it is not a rule limiting the subject-matter jurisdiction of the· court, so if there is a good reason for delay the district judge can excuse noncompliance with the rule. *Cabinetree of Wisconsin Inc. v. Kraftmaid Cabinetry, Inc., supra,* 50 F.3d at 390–91; *St. Mary's Medi-*

*cal Center v. Disco Aluminum Products Co.,* 969 F.2d 585, 589 (7th Cir.1992); *Gilmore v. Shearson/American Express, Inc.,* 811 F.2d 108, 113 (2d Cir.1987). And we'll reverse only if the judge has acted unreasonably in doing so. *Cabinetree of Wisconsin Inc. v. Kraftmaid Cabinetry, Inc., supra,* 50 F.3d at 390; *St. Mary's Medical Center v. Disco Aluminum Products Inc., supra,* 969 F.2d at 588–89; contra, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995) (holding that the judge's determination is to be reviewed de novo).

■ We cannot quite say that the judge was unreasonable. BOCT was entitled to elect in filing its original complaint to proceed under the Interstate Commerce Act rather than under the interchange agreement. A plaintiff is not required to invoke every theory of recovery that may be available to him, although he runs the risk of forfeiting an omitted theory by operation of waiver, res judicata, or other defenses. The interchange agreement consisted of an ex-. change of documents with no final, signed contract, and although it was plausible that the exchange was sufficiently final and definite to constitute a legally enforceable contract, this was by no means certain and BOCT could reasonably believe that breach of contract was an infirm basis for seeking millions of dollars in back charges and fees from WCL. Even if it were an otherwise enforceable contract, moreover, it might be preempted by the tariff, as we shall see. And it contained some language that favored WCL by defining the services covered by the agreement so narrowly as possibly to exclude the services that BOCT had rendered and was trying to get paid for. But then WCL— in hindsight mistakenly, indeed disastrously, for in the arbitration BOCT obtained far greater damages than it could have obtained under the tariff with its shorter statute of limitations—injected the contract into the case. BOCT had now to reconsider its options—and not in the sense, deprecated in *Cabinetree,* in which a party delays invoking arbitration until it senses that the litigation in court is not going well for it. It had to do so promptly, however. *Sharpe v. Jefferson Distributing Co., supra,* 148 F.3d at 679–80.

Yet its immediate response—the lawyer's natural reflex to an opponent's claim—the position that it took in its response to WCL's answer, was to deny that the agreement was enforceable. Mediation efforts ensued and it was when they failed that BOCT changed its position, decided the agreement was enforceable, and invoked the arbitration clause.

■ When it did this, no discovery had yet been taken in the suit, no signals pro or con BOCT's position had been emitted by the district judge, and WCL had suffered no harm from BOCT's delay in requesting arbitration. None of these factors is determinative, however, not even absence of harm. *Cabinetree of Wisconsin Inc. v. Kraftmaid Cabinetry, Inc., supra,* 50 F.3d at 390; see also *St. Mary's Medical Center v. Disco Aluminum Products Inc., supra,* 969 F.2d at 590. Courts have an independent interest in keeping a suit so far as possible in one place rather than letting it bounce around from court to arbitrator to court. The Second Circuit, it is true, has held in two recent cases that without proof of harm a delay in invoking arbitration is irrelevant. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., supra,* 67 F.3d at 25; *PPG Industries, Inc. v. Webster Auto Parts, Inc.,* 128 F.3d 103, 108 (2d Cir.1997). But in neither case did the court refer to our contrary decisions and the only reason it gave for its result was the existence of a policy of favoring resort to arbitration as a means of settling disputes. The strength it ascribes to that policy probably explains as well the other holding of *Leadertex,* that a refusal, because of delay, to enforce an arbitration clause is reviewable by the appellate court de novo.

One might have supposed that the only policy in play would be that of giving effect to parties' contractual choices, which sometimes include arbitration. That has indeed been authoritatively described as the principal goal of the Federal Arbitration Act, which repudiated the traditional judicial hostility to enforcing arbitration awards. *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219–21, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The cases also speak, however, of wanting affirmatively to encourage people to agree to resolve their legal disputes by arbitration; but at least as far as commercial as distinct from labor arbitration is concerned, the reason for this extracontractual affection for arbitration is to lighten the pressure on the courts. *National Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 133 (2d Cir.1996). This reason is not well served by allowing a party to elect arbitration when he has allowed the case to proceed in court until he makes a tactical decision that he might do better before an arbitrator.

But here the tactical decision was precipitated by the opponent, which injected the contract with its arbitration clause into the case. It is true that BOCT wasn't quick off the mark, and didn't just add a claim but flip-flopped, having previously denied the enforceability of the agreement on which it based the new claim. Another district judge might reasonably have found that BOCT indeed waited too long. But considering the lack of harm, the lack of activity in the court proceedings, and the absence of any discreditable tactical motive for the belated invocation of arbitration, we cannot say that Judge Hart was unreasonable in allowing BOCT to invoke the arbitration clause.

■ This bring us to the question whether the judge was right to hold that WCL had waived its filed-tariff defense to the breach of contract claim by failing to present it to the arbitrators. WCL makes three arguments. The first is that a claim under the filed-tariff doctrine is not arbitrable, though it is plainly within the scope of the arbitration clause in the interchange agreement. The clause requires arbitration of *all* irreconcilable disputes arising out of the agreement, and all includes the dispute over whether BOCT's reliance on the agreement as a basis for seeking the recovery of its switching charges and car-rental fees was blocked by the filed-tariff doctrine. The doctrine (now drastically curtailed in the railroad industry, see 49 U.S.C. § 13702(a)) requires a common carrier or public utility to price in accordance with the terms of the applicable tariff that it has filed with its regulatory commission; it may not vary those terms by agreement with its customer. *American Tel. & Tel. Co. v. Central Office Tel. Inc.,* —— U.S. ——, —— ——, 118 S.Ct. 1956, 1962–63, 141 L.Ed.2d

222 (1998); *Security Services, Inc. v. K Mart Corp.*, 511 U.S. 431, 435–40, 114 S.Ct. 1702, 128 L.Ed.2d 433 (1994); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998); *Hargrave v. Freight Distribution Service, Inc.*, *supra.* This rule is subject, as BOCT points out, to a provision of the Interstate Commerce Act, since repealed, that allowed intercarrier agreements to supersede filed tariffs but required that the agreement be itself filed with the Commission. 49 U.S.C. § 10713(b) (1994 ed.). (The current law, with an immaterial exception, see 49 U.S.C. § 10709(d)(1), does not require that the agreement be filed.) As the interchange agreement between BOCT and WCL was not filed, there is doubt whether it can supersede a filed tariff, though we cannot find a case on the point and this case is certainly remote from the purpose of the filed-rate doctrine, which is to prevent shippers from negotiating secret discounts with carriers. *New York, New Haven & Hartford R.R. v. ICC*, 200 U.S. 361, 391, 26 S.Ct. 272, 50 L.Ed. 515 (1906); *Cahnmann v. Sprint Corp.*, *supra*, 133 F.3d at 487; *Carriers Traffic Service, Inc. v. Anderson, Clayton & Co.*, 881 F.2d 475, 480–81 (7th Cir.1989). WCL is not a shipper; and the interchange agreement *incorporated* the filed tariff and so did not entitle BOCT to a higher than tariff rate but only to a longer period of limitations.

WCL argues that arbitrators cannot be trusted to apply the filed-rate doctrine because they might make a mistake (they may have made one here, though this is far from clear, as we have just seen), and it is harder to correct an arbitrator's mistake on judicial review than a district judge's because the scope of judicial review of arbitral awards is so narrow. But if this argument were accepted, no issue of law, or perhaps no issue, period, could ever be arbitrated (or else the scope of judicial review would have to be changed, as one court believes, as we're about to see). It used to be thought that many, perhaps most, statutory claims, which are more likely to present issues of law than contract claims, were nonarbitrable. But the pendulum has swung and now it seems that most, perhaps all, statutory claims are arbitrable. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Rodriguez de Quijas v. Shearson/America Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 181–83 (3d Cir.1998); but see *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1187–1200 (9th Cir.1998), unless the statute prohibits arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); cf. *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 364–65 (7th Cir.1997). The arbitrability of statutory claims entails that arbitrators can decide questions of statutory interpretation, see *Rootberg v. Central States, Southeast & Southwest Areas Pension Fund*, 856 F.2d 796, 800 (7th Cir.1988); *Coastal Oil of New England, Inc. v. Teamsters Local a/w*, 134 F.3d 466, 469–70 (1st Cir.1998); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 825 (2d Cir.1997); *Cole v. Burns Int'l Security Services*, 105 F.3d 1465, 1468–69, 1478 (D.C.Cir.1997), such as the status of an unfiled interchange agreement. *Cole* suggests that judicial review of an arbitrator's answer to a question of law is broader than the normally extremely limited judicial review of arbitral awards, see *id.* at 1468–69, but that is of no significance in this case.

No provision of the Interstate Commerce Act expressly forbids the arbitration of claims under the Act. But the cases we have cited hold that the statutory prohibition need not be express to be effective; as in other cases of preemption, it is enough if allowing arbitration would disrupt the statutory scheme. And so it is pertinent to note that the doctrine of primary jurisdiction confides some issues in litigation under the Interstate Commerce Act to the ICC (now the STB) even when the litigation is brought in court rather than in the agency, and the doctrine may therefore be said to evince distrust of judges and conceivably of arbitrators as well. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 743–45, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). The central

issue that the doctrine confides to the agency is the reasonableness of the terms in the tariff. *Burlington Northern Inc. v. United States*, 459 U.S. 131, 141, 103 S.Ct. 514, 74 L.Ed.2d 311 (1982); *Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347, 1353 (5th Cir.1992); *Duffy v. BMC Industries, Inc.*, 938 F.2d 353, 356–57 (2d Cir.1991). The district judge was therefore right to refer that issue (and the closely related issue of whether the tariff was discriminatory) to the Surface Transportation Board.

The doctrine of primary jurisdiction is also sometimes invoked with regard to issues of tariff interpretation involving highly technical matters central to the agency's mission and expertise. *Advance United Expressways, Inc. v. Eastman Kodak Co.*, supra, 965 F.2d at 1353; *Duffy v. BMC Industries, Inc.*, supra, 938 F.2d at 356. An issue of tariff interpretation that does not involve such matters may, as these same cases make clear, be decided by the court without a reference to the agency. And if by a court, why not by an arbitrator? Arbitrators regularly interpret highly complex, technical contracts. They are competent to interpret run-of-the-mill railroad tariffs as well. Most tariffs are a good deal less complex than patent licensing contracts, large-scale construction contracts, aircraft leases, executive employment contracts, long-term requirements contracts—and for that matter most insurance policies.

█ The particular issue in controversy here, however, is neither one of tariff interpretation nor one of the reasonableness of the tariff rate. The issue is the lawfulness of BOCT's charging WCL under the interchange agreement when the agreement had not been filed with the STB. This is an issue of law rather than a matter within the special expertise of the STB, and therefore it did not have to be referred to the agency. Courts regularly decide the scope of the filed-tariff doctrine, see, e.g., *Security Services, Inc. v. K Mart Corp.*, supra; *Marcus v. American Tel. & Tel. Co.*, 138 F.3d 46, 58–60 (2d Cir. 1998), and that is all that is involved here, except that it was an arbitral panel rather than a court that was called on to make the decision. Neither of the parties suggests that the *Chevron* doctrine extends the doctrine of primary jurisdiction to pure issues of law, even if the law in question is the organic statute of the regulatory agency, though there is the hint of such a position in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 366–67 and n. 10, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994). See also 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.3, pp. 285–86 (1994).

█ In any event, the doctrine of primary jurisdiction is not, despite its name, jurisdictional. *Northwest Airlines, Inc. v. County of Kent*, supra, 510 U.S. at 366 n. 10; *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 51 F.3d 703, 706 (7th Cir.1995); *Johnson v. Artim Transportation System, Inc.*, 826 F.2d 538, 548 (7th Cir.1987); but cf. *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1106 (3d Cir.1995). Indeed, it presupposes that the court (or other tribunal in which the case is pending—WCL could have asked the arbitrators to refer the issue of compliance with the filed-rate doctrine to the Surface Transportation Board) has jurisdiction over the case. It is therefore waivable, as in the cases just cited (all but *MCI*, where the court, over a dissent, deemed the doctrine jurisdictional—but it was really talking about an area of exclusive state jurisdiction). It was waived here by the agreement to submit to arbitration issues that the doctrine would otherwise assign to an administrative agency. Were the issue one of transcendent importance to the administration of the Interstate Commerce Act and we were so advised in an amicus curiae brief filed by the STB, we would relieve the parties of their waiver. *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 51 F.3d 703, 706 (7th Cir.1995); *Johnson v. Artim Transportation System, Inc.*, supra, 826 F.2d at 548; *New England Legal Foundation v. Massachusetts Port Authority*, 883 F.2d 157, 161 (1st Cir.1989). There is nothing of that sort here.

BOCT does not argue that WCL waived the right to challenge before the Surface Transportation Board a tariff covering the same service as the interchange agreement

(the agreement containing the arbitration clause), even though the terms of the tariff were incorporated in the agreement. So we need not consider the efficacy of such a waiver.

We can set quickly to one side WCL's second argument, that whether or not a filed-tariff defense is arbitrable the judge told the parties it was not and this is why WCL didn't raise the defense in the arbitration. There is a simple answer: he didn't tell them that. He merely warned them that the arbitration might moot some of WCL's defenses.

The third argument is that since the filed-tariff doctrine forbids parties to contract around the tariffed rate, the doctrine cannot be waived by not being presented in an arbitration, whatever might be the case with other invocations of the doctrine of primary jurisdiction. But in thus treating the filed-tariff doctrine as one forbidding waivers, WCL confuses a rule limiting freedom of contract with a rule limiting procedural waivers, such as the rule that makes objections to subject-matter jurisdiction nonwaivable. The filed-tariff doctrine limits the power of a seller and a buyer to negotiate a price different from the price in a filed tariff. It is not addressed to the rules of procedure that come into play when, the parties' contractual relation having broken down, they find themselves in litigation with each other. The logic of WCL's argument is that, had it failed to file a notice of appeal within the prescribed thirty days, it could still have filed it later; otherwise its filed-tariff claim would have been forfeited and then BOCT, in defiance of the filed-tariff doctrine, might get away with an episode of off-tariff pricing. The argument, rejected in *West Coast Truck Lines, Inc. v. American Industries, Inc.*, 893 F.2d 229, 234 (9th Cir.1990), would be as absurd as an argument that since usurious contracts are unenforceable, a usury claim cannot be waived. (That argument has also been rejected. *McCarthy v. First National Bank*, 223 U.S. 493, 498, 32 S.Ct. 240, 56 L.Ed. 523 (1912); *Whirlpool Financial Corp. v. Sevaux*, 96 F.3d 216, 227 (7th Cir.1996).) By failing to present its filed-tariff defense to the arbitrators, WCL waived it as surely as if

it had failed to present it to the district court or this court.

AFFIRMED.