**LIFSCHULTZ FAST FREIGHT, INC., Plaintiff,**

v.

**NATIONAL MANUFACTURING COMPANY, Defendant.**

No. 91 C 20142.

United States District Court, N.D. Illinois, W.D.

Oct. 16, 1992.

Stephen E. Balogh, Williams & McCarthy, Rockford, Ill., Mark L. Dressel, Morgan, Lanoff, Denniston & Madigan, Ltd., Chicago, Ill., for plaintiff.

David J. Fischer, Fischer, Kendle & Wahlers, Chicago, Ill., for defendant.

## ORDER

REINHARD, District Judge.

## INTRODUCTION

Before this court is defendant's, National Manufacturing Company, motion for stay of proceedings and referral to the Interstate Commerce Commission (ICC). This motion is in response to plaintiff's, Lifschultz Fast Freight, Inc., complaint seeking

certain "undercharges" for shipments plaintiff carried for defendant. Defendant seeks referral to the ICC on two grounds: (1) that plaintiff has failed to comply with the ICC's credit regulations and has failed to prove the elements necessary to invoke the loss-of-discount remedy it seeks; and (2) that the rates plaintiff now seeks to apply are "unreasonable." Defendant contends that the ICC has primary jurisdiction over the reasonableness of rates and, therefore, these issues should be referred to it.

## FACTS

Plaintiff is a common motor carrier operating in interstate commerce. Plaintiff published a 47% discount in a lawfully filed tariff on behalf of defendant, a shipper. Plaintiff now seeks to collect $9,401.84 in freight undercharges for 177 shipments that plaintiff transported for defendant in 1988 and 1989. Plaintiff asserts that defendant is liable for the full filed rate because defendant did not pay the original freight charges for these 177 shipments within the credit period provided in plaintiff's rules tariff.

## CONTENTIONS

A. *Plaintiff has not Complied with the ICC's Regulations Governing the Extension of Credit.*

The ICC's credit regulations provisions provide for a loss-of-discount remedy to a carrier as a liquidated damage to compensate the carrier for collection expenses. However, in order for this remedy to apply, the carrier must comply with several ICC regulations. Included among these requirements are that a shipper must have notice that failure to pay within the time period will result in a loss of discount; that the carrier must issue the shipper a revised freight bill with notice of the higher charges sought; and, the freight bills can not be on one aggregate "balance due" sheet—rather, the freight bills must be independent and separate. *See* 49 C.F.R. § 1320.3(c); §§ 1320.2(g)(2)(iii), (vi).

Defendant asserts that to recover loss-of-discount damages, plaintiff must meet certain evidentiary requirements; namely, plaintiff must prove when the original freight bills were sent to defendant, when defendant received the original freight bills, and when plaintiff first received payment from defendant for the original discounted freight bills.

Defendant essentially argues that plaintiff's claim constitutes an "unreasonable" practice in tariff collection and therefore, should be referred to the ICC for determination.

B. *The Full Filed Rate Requested by Plaintiff is Unreasonable.*

Defendant's second assertion is, that if plaintiff should prevail on the above issues and be awarded the full tariff rate, that rate itself is unreasonably high. Defendant contends that the ICC has primary jurisdiction to determine whether any filed rate is reasonable.

■ To justify a referral on an unreasonableness claim, however, a party must meet a threshold showing of unreasonableness. *Atlantis Express, Inc., v. Standard Trans. Serv., Inc.,* 955 F.2d 529, 537–38 (8th Cir. 1992) (holding that the shipper's comparison of rates between the carrier and other carriers, showing that the carrier's filed rates were higher than the market rate, was sufficient to justify referring the matter to the ICC.)

In the present case, defendant has submitted the affidavit of Michael Bange, a transportation industry expert. Bange avers that the "corrected charges" plaintiff now seeks are 87% higher than, "or nearly double", the charges originally billed by plaintiff. Bange further states that the 47% discount given to defendant was a typical practice among other carriers doing similar business during the same time frame. (Bange's Aff. at 10).

## DISCUSSION

I. Background

Under the Interstate Commerce Act (Act), 49 U.S.C. § 10101 et seq., motor common carriers must file their rates with the

ICC, and both the carrier and shipper must comply with these rates. The ICC regulates the modes of interstate transportation by motor common carriers "to encourage the establishment and maintenance of reasonable rates for transportation, without unreasonable discrimination or unfair or destructive competitive practices." 49 U.S.C. § 10101(a)(1)(D).

■ Further, "[a] rate, ... classification, rule or practice related to transportation or service provided by a carrier ... must be reasonable." 49 U.S.C. § 10701(a). A carrier must file with the ICC tariffs containing rates, classifications, rules and practices related to those rates. 49 U.S.C. § 10762(a)(1). The Act proscribes a carrier from deviating from the filed rate. Section 10761(a) provides:

> Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

49 U.S.C. § 10761(a). This practice of not allowing negotiated or discounted rates, except as otherwise provided, has become known as the "filed rate doctrine." *Atlantis Express*, 955 F.2d at 531.

A proper analysis of the issues before this court begins with the recent Supreme Court decision in *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In *Maislin*, the Supreme Court addressed two recent rulings by the ICC, *Negotiated Rates I* and *Negotiated Rates II*, which were responses to recent developments in the industry where carriers would negotiate rates lower than the filed (or tariff) rate and neglect to file the negotiated rate with the ICC. In many instances, the carrier would file bankruptcy and the trustee would bill the shipper for the filed rate. *Maislin*, 497 U.S. at 121–22, 110 S.Ct. at 2763. Normally, in such a situation, a shipper would be precluded from raising a defense to the collection of a filed rate. The *Negotiated Rates* decisions were aimed at allowing the shipper to raise as a defense the reasonableness of the carrier's practice. *Maislin*, 497 U.S. at 121–22, 110 S.Ct. at 2763 (citing *Negotiated Rates II*, 5 I.C.C.2d 623, 631 (1989)).

The facts in *Maislin* are as follows. Petitioner, Maislin Industries (Maislin), sought to recover freight undercharges from respondent, Primary Steel (Primary). From 1981 to 1983, Maislin's subsidiary, Quinn Freight Lines (Quinn), privately negotiated rates with Primary that were lower than Quinn's published rates with the ICC. When Maislin filed bankruptcy in 1983, the agents of the bankrupt estate filed balance due bills to Primary, seeking to recover $187,923.36, representing the difference between the negotiated rate paid and the filed rate published with the ICC.

Primary refused to pay the balance due bills, and the estate brought suit in a federal district court. Primary raised two defenses: first, that the tariff rates constituted an unreasonable practice and second, that the tariff rates themselves were unreasonable. *Maislin*, 497 U.S. at 123–24, 110 S.Ct. at 2764. The district court referred the matter to the ICC, finding the subject matter to be within the ICC's primary jurisdiction. The ICC, relying on the *Negotiated Rates* decisions, found that since Primary believed the rates reached as a result of negotiations were the correct charges and Primary paid in full, Quinn's practice of trying to collect the higher, filed rates was unreasonable. *Maislin*, 497 U.S. at 125–26, 110 S.Ct. at 2765. The district court granted summary judgment to Primary on the basis of the ruling, thereby relieving Primary of any obligation to pay the difference between the negotiated and filed rates. The Court of Appeals for the Eighth Circuit affirmed. *Maislin Indus.*,

*U.S., Inc. v. Primary Steel, Inc.*, 879 F.2d 400 (8th Cir.1989).

The Supreme Court reversed the Eighth Circuit, relying on the Court's steadfast interpretation of the Act as forbidding equitable defenses to the collection of the filed tariff. *Maislin*, 497 U.S. at 126–28, 110 S.Ct. at 2766. The Court found that this "rigid approach was ... necessary to prevent carriers from intentionally 'misquoting' rates to shippers as a means of offering them rebates or discounts." *Maislin*, 497 U.S. at 127, 110 S.Ct. at 2766 (citing S.Rep. No. 46, 49th Cong., 1st Sess., 181, 188–90, 198–200 (1886)).

■ However, the Court noted that the filed rate doctrine has an important "caveat": if the ICC determines the filed rate to be unreasonable, that rate is not enforceable. *Maislin*, 497 U.S. at 128–29, 110 S.Ct. at 2767. In reading *Maislin*, the Supreme Court only overturned the ICC's ruling that Quinn had engaged in an unreasonable practice by attempting to recover the filed rates even though it had been paid the "negotiated" rates. The Court did not address whether the filed rate itself was reasonable, an issue the ICC never reached. The Court stated:

> The ICC did not determine whether the tariff rates were unreasonable even though respondent requested such a determination. We therefore must assume, for the purposes of our decision today, that the rates were reasonable. The issue of the reasonableness of the tariff rates is open for exploration on remand.

*Maislin*, 497 U.S. at 129 n. 10, 110 S.Ct. at 2767 n. 10. On remand, the district court held that Primary's reasonableness claim had been preserved and referred the matter to the ICC to determine "whether Maislin's [Quinn's] published tariff rate was reasonable within the meaning of 49 U.S.C. § 10701(a) in light of the factors and standards of 49 U.S.C. § 10701(e)." *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, No. 85–0021–CV–W–JWO–5, 1990 WL 264536, at \*2 (W.D.Mo. Nov. 21, 1990).

## II. Defendant's Bases for Referral to the ICC

■ This court will first address defendant's second basis for referral, that in the event it has to pay the filed rates, the filed rates requested by plaintiff are unreasonable and hence unenforceable. *Maislin* did not only leave unfettered the rule that a filed rate has to be reasonable to be enforced, it strongly reaffirmed the doctrine. Moreover, the Seventh Circuit has held in a pre-*Maislin* case that the filed rate reasonableness defense requires referral to the ICC, based on its primary jurisdiction over these matters. *Western Trans. Co. v. Wilson and Co., Inc.*, 682 F.2d 1227 (7th Cir. 1982). *See also Atlantis Express, Inc. v. Standard Trans. Serv., Inc.*, 955 F.2d 529 (8th Cir.1992) (noting that the majority of circuits have held that rate unreasonableness is a valid defense.) *Contra In re Carolina Motor Express, Inc.*, 949 F.2d 107 (4th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992) (requiring the filed rate to be paid before the ICC's determination of rate reasonableness.)

Therefore, in accordance with the above authority, this court holds that defendant's defense of the reasonableness of the rates sought requires the issue to be referred to the ICC. It is within the province and expertise of the ICC to make this determination.

■ This leaves the more difficult question regarding defendant's first basis for referral, namely that plaintiff has failed to comply with the ICC's credit regulations and has failed to prove the elements necessary to invoke the loss-of-discount remedy it seeks. It is well established that the ICC has primary jurisdiction for determining whether a rate or practice is reasonable. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 119–20, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990) (citing *Texas & Pacific R.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 439–41, 27 S.Ct. 350, 355–56, 51 L.Ed. 553 (1907)). As noted, this court holds that the ICC has such jurisdiction over the defendant's rate reasonable defense. However, it does not nec-

essarily follow that because referral is granted on the rate reasonableness defense, the ICC must, or should, be the body that determines whether plaintiff has complied with the necessary regulations to invoke a loss-of-discount remedy. Yet to sever the two issues and to have the ICC determine one issue with this court determining the other, does nothing to promote judicial economy and efficiency.

Defendant argues that based on 49 U.S.C. § 10743(b)(1), the Act "delegates to the ICC the exclusive authority to create and determine permissible credit regulations for post delivery payments." 49 U.S.C. § 10743(b)(1) reads:

> Under regulations of the Commission governing the payment for transportation and service and preventing discrimination, those carriers may give up possession ... of property ... before payment ...

Thus, the one exception to the filed rate doctrine is when regulations have been passed by the ICC. Defendant argues, therefore, that the ICC should be the body to decide whether those regulations which it has passed have been complied with.

In support for this proposition, defendant cites *Delta Traffic Serv. v. The Mennen Co.*, 919 F.2d 134 (3rd Cir.1990) (unpublished). In *Delta*, the shipper contested the carrier's loss-of-discount claim namely because the provision failed to notify the shipper of the loss-of-discount provision. The court referred the matter to the ICC to determine, *inter alia*, whether the shipper was entitled to notice of the loss-of-discount provision. Based on the Commission's determination "that the loss-of-discount provision violated the credit rules of the ICC in effect at the time because the provision failed to notify the shipper of the loss of discount provision," the district court granted summary judgment to the shipper. *Delta*, 919 F.2d 134, slip op. at 1, 2.[1]

Plaintiff relies on *Interstate Commerce Comm'n v. Transcon Lines*, 968 F.2d 798 (9th Cir.1992). In *Transcon*, the ICC moved to enforce it's own regulations in arguing that Transcon had not complied with the regulations concerning the extension of credit. Notably, the regulations in *Transcon* are the same as in the present case. In short, in *Transcon*, the ICC made the same arguments defendant is asserting now, based on 49 C.F.R. 1320.3(c), 1320.-2(g)(iii) and 1320.2(g)(2)(vi).

The *Transcon* court rejected these arguments and would not grant the requested injunction thereby allowing the ICC to apply its regulations in such a way as to undercut the filed rate. The *Transcon* court analogized this practice to the former ICC's *Negotiated Rates* ruling rejected in *Maislin*. The court held, "Although the Act authorizes the ICC to regulate carrier credit, the filed rate doctrine trumps the manner in which the ICC seeks to regulate carrier credit in this case." *Transcon*, 968 F.2d at 807. The *Transcon* court further stated, "Regulations, however valid in other contexts, cannot furnish the reason for letting the carrier abandon the filed rate." *Transcon*, 968 F.2d at 807.

This assertion essentially misses the point. As stated previously, 49 U.S.C. § 10761(a) and § 10743(b)(1) provide for one exception to the filed rate doctrine: the filed rate does not apply when the ICC has issued credit regulations *that are complied with*. Thus, the carrier *can* abandon the filed rate when these regulations are complied with. As a consequence, it is for the ICC to determine first, whether a carrier has complied with these credit regulations.

The *Transcon* court also stated, "The ICC's interpretation of these regulations to allow such a result then has no greater force than the policy rejected in *Maislin*." *Transcon*, 968 F.2d at 807. This court finds this reliance on *Maislin* to be misplaced. The Supreme Court in *Maislin* did not deal with the validity of certain ICC regulations; rather, the Supreme Court overturned the ICC's policy that any time a carrier filed a claim for the difference be-

---

**1.** As this is an unpublished opinion, it has no precedential value and this court does not rely on it. 3D. Cir.R.App. I, IOP 5.6.

tween the filed rate and unpublished nego-tiated rate, this practice was unreasonable.

The regulations in the present case are of an entirely different nature. In some cases, it will be determined that the carrier did comply with the credit regulations, and in those instances the filed rate will be recoverable. In other cases, and this is what defendant is asserting here, the carrier will not have complied with the regulations and therefore not be entitled to recover the full filed rate. Accordingly, it remains for the ICC to determine first, whether these credit regulations have been complied with.

For the foregoing reasons, this court rejects the *Transcon* analysis. The *Transcon* court overlooks the fact that 49 U.S.C. § 10743(b)(1) allows one exception to the filed rate doctrine, that the ICC can make regulations to that effect. Indeed, the Interstate Commerce Act grants the ICC the power to decide whether a loss-of-discount remedy is applicable when applying the regulations. To hold as did the court in *Transcon*, in effect renders meaningless all the conditions to an extension of credit in 49 C.F.R. 1320–29. The regulations outlined by the ICC pursuant to its granted authority must be complied with before a carrier can invoke a loss-of-discount remedy. Otherwise, the ICC is stripped of authority as granted by Congress in the Interstate Commerce Act.

*United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) supports this finding. In *Western Pacific*, the plaintiff sued the United States to recover the difference between the tariff rates actually paid and the filed rates. The government motioned to refer the proceedings to the ICC to decide whether the tariff was a reasonable practice. *Western Pacific*, 352 U.S. at 61, 77 S.Ct. at 163. At issue was whether the tariff was applicable to the particular shipments. In concluding that the ICC had primary jurisdiction over the matter, the Supreme Court stated:

> [W]here words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application,

so that 'the inquiry is essentially one of fact and of discretion in technical matters,' then the issue of tariff application must first go to the Commission. *Western Pacific*, 352 U.S. at 65, 77 S.Ct. at 165 (quoting *Great Northern R.R. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922)).

The Court held that both the issues of tariff construction and the filed rate reasonableness were within the primary jurisdiction of the ICC. *Western Pacific*, 352 U.S. at 69, 77 S.Ct. at 167 ("[W]here ... the questions of construction and reasonableness are so intertwined that the same factors are determinative on both issues, then it is the Commission which must first pass on them.").

In the instant case, this court finds that the determination of whether plaintiff has complied with the ICC's credit regulations is analogous to the determination in *Western Pacific* concerning the construction and application of the tariff. Therefore, this court will refer the entire matter to the ICC. As the ICC has promulgated these regulations pursuant to congressional authority, the ICC, an agency with expert and specialized knowledge in this field, must be the forum that first considers whether plaintiff has complied with the applicable credit regulations.

## CONCLUSION

For the foregoing reasons, this court grants defendant's motion for stay of proceedings and referral to the Interstate Commerce Commission. Further, this court refers to the Interstate Commerce Commission the following issues: (1) whether plaintiff has complied with the necessary regulations in order to be granted a loss-of-discount remedy; and (2) if so, whether the filed rate which plaintiff now seeks is "reasonable" pursuant to 49 U.S.C. 10701(a).