**In re LIFSCHULTZ FAST FREIGHT CORP., Debtor.**

**Bruce E. de'MEDICI, Trustee, Plaintiff,**

**v.**

**FLYGT CORPORATION, FDSI Management Group and Five Dollar Clothing Stores, Defendants.**

**Bankruptcy No. 90 B 21673.**

**Adv. Nos. 92 A 01337, 92 A 00841 and 92 A 00022.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 23, 1993.

Robert B. Walker, Joseph L. Steinfeld, Jr. and John T. Siegler, Sims, Walker & Steinfeld, Washington, DC, for trustee.

Bruce E. de'Medici, Rodriguez & Villalobos, Chicago, IL, for the estate.

Thomas F. McFarland, Jr., Belnap, Spencer, McFarland & Herman, Chicago, IL and Daniel J. Sweeney, McCarthy, Sweeney & Harkaway, P.C., Washington, DC, for ITT Flygt Corp.

William D. Brejcha, Abramson & Fox, Chicago, IL and Robert J. Gallagher, Northhampton, MA, for FDSI Mgmt. Group and Five Dollar Clothing.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

### I. INTRODUCTION

These adversary proceedings involve the procedural residue left by the Supreme Court's recent decision in *Reiter v. Cooper*, — U.S. —, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), holding that shippers' unreasonable rate claims made in response to bankruptcy trustees' attempts to collect unpaid filed tariffs are in the nature of recoupment, subject to ordinary rules governing counterclaims. The principal issue to be decided by this Court in light of *Reiter* is whether the Trustee's claims to collect filed rates should be stayed pending referral of unreasonable rate issues to the Interstate Commerce Commission ("ICC").[1] For the reasons discussed below, this Court will stay the Trustee's claims.

### II. BACKGROUND

The Debtor, Lifschultz Fast Freight Corp., a Pennsylvania corporation, operated as a motor carrier in interstate commerce pursuant to authority granted by the ICC. The Interstate Commerce Act ("ICA") requires motor carriers to file with the ICC their tariffs containing rates, classifications, rules and practices. 49 U.S.C. § 10762(a)(1). The ICA then prohibits carriers from charging or receiving compensation different than the specified tariff rate. 49 U.S.C. § 10761(a). This statutory mandate to charge and collect the filed rate[2]

---

1. The captioned defendants filed motions to stay proceedings in this Court and refer matters to the ICC. This Court previously announced that resolution of the pending motions would affect all pending adversaries in which primary jurisdiction issues are raised.

2. Filed tariffs "typically contain tiers of rates. These include both class or bureau rates and

has come to be known as the "filed rate doctrine". *See Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990) (Supreme Court traced the historical development of and then reaffirmed the "filed rate doctrine").

Many carriers, including the Debtor, did not comply with this statutory requirement. They charged a rate less than the applicable filed rate, and never sought to collect the balance. To have done so, as recently noted by the D.C. Circuit, would have been the commission of "commercial suicide". *Overland Express, Inc. v. ICC, et al.*, 996 F.2d 356 (D.C.Cir.1993). Commercial suicide, however, is not necessarily a concern for bankruptcy trustees. Creditors filed an involuntary chapter 11 petition against the Debtor and this Court soon thereafter converted the case to chapter 7. Since the inception of this case, the Trustee has filed approximately 370 adversary proceedings (often with multiple defendants) seeking collection of the difference between the amounts already paid by the defendant-shippers and the applicable filed rates.

In *Reiter*, the Supreme Court succinctly framed the substance of the Trustee's claims:

> A motor carrier negotiates with a shipper rates less than the tariff rates that the Interstate Commerce Act (ICA), 49 U.S.C. § 10701 *et seq.*, requires the carrier to "publish and file" with the ICC, 49 U.S.C. § 10762. After the shipments are delivered and paid for (sometimes years after), the carrier goes bankrupt and its trustee in bankruptcy sues the shipper to recover the difference between the negotiated rates and the tariff rates. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1216.

While shippers cannot avoid payment of the filed rate by "invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate," *Reiter*, —— U.S. at ——, 113 S.Ct. at 1219, the shippers are not defenseless.

The Supreme Court also reaffirmed that collection by the trustee of the filed rate is subject to "claims and defenses that are specifically accorded by the ICA itself". *Id.*

Before *Reiter*, shippers had maintained that one such "defense" is that the ICA itself requires the filed rate to be reasonable. 49 U.S.C. § 10701(a). *Cf. Maislin*, 497 U.S. at n. 10, 110 S.Ct. at n. 10 (assertion of unreasonable tariff is issue to be decided in connection with collection of filed rate). Since filed rates must be reasonable, the argument goes, trustees may not collect unpaid freight bills to the extent based on unreasonable rates. Moreover, since the issue of reasonable rates is within the primary jurisdiction of the ICC, the trustees' collection actions must be stayed pending resolution of the unreasonable rate defense by the ICC. *See generally Milne Truck Lines, Inc. v. Makita U.S.A., Inc.*, 970 F.2d 564 (9th Cir.1992) (citing majority of circuit decisions and agreeing that the unreasonable rate issue is a "defense").

The Fourth Circuit disagreed with this characterization that an unreasonable rate is a "defense" to the filed rate doctrine. *In re Carolina Motor Express, Inc.*, 949 F.2d 107 (4th Cir.1991). Technically, that court observed, a shipper's claim of unreasonableness gives rise to an independent statutory cause of action for reparations in an amount equal to the difference between the applicable filed tariff rate and the rate determined to be reasonable by the ICC. *See* ICA § 11705(b)(3); § 11706(c)(2). Thus, according to the Fourth Circuit, a claim of unreasonableness is not a "defense" to the payment of the filed rate. As a consequence, the court refused to stay the trustee's claims and required shippers to satisfy their liability to the estate. After payment, the shippers could assert a claim against the estate for damages to the extent the filed rate is unreasonable. As noted by Judge Hall in dissent, the shippers are then left with an unsatisfactory

---

various discounted rates, based on the type and volume of traffic and market conditions." ICC

Ex Parte No. MC–208, n. 6.

pro rata recovery against the estate. *Carolina Motor Express*, 949 F.2d at 113.

The Supreme Court granted certiorari in *Carolina Motor Express* to resolve this conflict among the circuits. The Supreme Court held that a shipper's right to reparations is an independent statutory cause of action, not a defense. *Reiter*, — U.S. at ——, 113 S.Ct. at 1217.[3] In fact, the Court observed, since the reparations claim arises out of the same transaction as the trustee's claim, the shipper's claim is a counterclaim in the nature of recoupment. The effect of an action for reparations, therefore, is that the trustee's recovery can be no greater than the reasonable rate determined by the ICC.

This is so, however, only when the shipper has an opportunity to offset its counterclaim against the trustee's claim. The Supreme Court dealt with this problem when it pronounced that usual procedures governing counterclaims should apply. Pursuant to Federal Rule of Civil Procedure 54(b), made applicable here by Federal Rule of Bankruptcy Procedure 7054, a court has the discretion to enter a final judgment on the trustee's claim before entering judgment on the shipper's counterclaim, but only after making "an express determination that there is no just reason for delay". "Just reason for delay" may include the insolvency of the carrier that would render the reparations offset ineffective. (The Supreme Court, however, stopped short of declaring insolvency as an absolute bar to a final judgment on the trustee's claim.) Therefore, in those proceedings where the equities (particularly the carrier's insolvency) do not favor the entry of final judgment on the trustee's claims, the shippers will be able to pursue their reparations actions with the ICC before the Trustee is allowed recovery on the undercharge claims. When final judgment is entered, it will net out any reparations against shipper liability for undercharges.

**3.** The Court, however, reversed and remanded the Fourth Circuit's decision for its failure to

## III. ISSUE

While the result in *Reiter* is favorable to the shippers, it is slightly different from the results previously obtained in the majority of circuit courts that held the unreasonable rate issue to be a "defense", not a counterclaim. The necessary result in those cases was suspension of the trustee's claim while the ICC determined the merits of the shipper's defense. Now that the Supreme Court has characterized the unreasonable rate issue as a counterclaim, however, a different question is raised: whether the Trustee's claims should be stayed while the shippers' *independent* unreasonable rate counterclaims are determined by the ICC?

## IV. DISCUSSION

■ In *Reiter*, the Court sanctioned the practice of staying the trustee's claims pending referral of reparation proceedings when it discussed an older decision, *Crancer v. Lowden*, 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077 (1942). In *Crancer*, the Supreme Court found no abuse of discretion by the trial judge's *refusal* to stay the carrier's collection action pending administrative review of the shipper's reparations proceeding. Prior to *Reiter*, some courts read *Crancer* as "cast[ing] considerable doubt on the authority of a district court to *grant* a stay and refer tariff challenges to the Commission prior to payment." *Duffy v. BMC Industries, Inc.*, 938 F.2d 353, 355 (2d Cir.1991); *see also Lifschultz Fast Freight, Inc. v. Rainbow Shops*, 784 F.Supp. 89, 91 (S.D.N.Y.1992) (citing *Crancer* and *Duffy* and holding that a stay pending referral is contrary to the provisions and purposes of the ICA). Justice Scalia, however, interpreted *Crancer* as holding only that the trial court "was not *required* to stay the collection proceeding until the ICC ruled on the reasonableness of rates; not that the court was *prohibited* from doing so." *Reiter*, — U.S. at ——, 113 S.Ct. at 1219. Justice Scalia then underscored that the holding in *Reiter* is en-

comply with FED.R.CIV.P. 54, as discussed below.

tirely consistent with that reading of *Crancer*. Therefore, the trial judge has the discretionary power to stay proceedings on the trustee's claims.

■ The Trustee argues that it would be inefficient to stay his claims because, after all, they may be flawed. Judicial economy, therefore, would be served best by having his claims determined first (in effect staying the counterclaims instead). The Trustee points to the recent unpublished order in *Langdon M. Cooper, Trustee v. Louisiana Pacific Corp.*, Adv. No. 92–3303, 1993 WL 367623 (Bankr.W.D.N.C., April 1, 1993). There, Judge Wooten granted summary judgment in favor of the trustee but delayed *entry* of that judgment until further order, during which time the shippers could pursue their reparations counterclaims by initiating an unreasonable rate complaint with the ICC pursuant to ICA § 11701(b) and § 11705(b)(3).[4] The Trustee adopts Judge Wooten's justifications for deciding the trustee's claims first: (1) it places the burden on the plaintiff to prove his case, (2) if the trustee fails to prove his case, the parties and the ICC would not need to expend resources on the reparations counterclaims, and (3) if the trustee prevails, the court would determine the applicable filed rates at issue and the amount of liability subject to recoupment.

The Trustee's claims are relatively simple: the Defendants paid less than the applicable filed rates. Under *Maislin*, he is entitled to recover the difference. It is most probable that the Trustee will be able to make out a prima facie case for his claims, requiring the further decision of defenses and counterclaims within the primary jurisdiction of the ICC. If these defenses and counterclaims are going to be heard by the ICC in any event, it makes more sense to stay the Trustee's claims since it is possible that the ICC determinations will render moot some if not all of the Trustee's claims.

■ Moreover, if there is dispute about any element of the Trustee's claims, it is likely to be about the applicable filed rate. But, assuming there is such a dispute, referral to the ICC has an additional advantage. Recoupment, by definition, involves a claim arising out of the same transaction as the plaintiff's claim. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1218. The same predicate facts must be established by the shipper as would be established by the trustee in making out a prima facie case. In particular, the shipper will have to identify the filed rate it claims to be unreasonable. Upon referral, the ICC may make a threshold determination that the rate the trustee is seeking to collect is not in fact the applicable tariff rate for the shipments at issue. Therefore, not only might it be inefficient for this Court to make factual determinations on the Trustee's claim if the counterclaim moots the issue, it also would be inefficient for this Court to engage in the very same factual determinations that are a necessary part of the complaint heard by the ICC.

Indeed, in its controversial Ex Parte No. MC–208 decision (held invalid by the 3rd Circuit in *White v. United States*, 989 F.2d 643 (3rd Cir.1993)), the ICC lists extensive information that it deems necessary to resolve undercharge claims.[5] Since this in-

---

**4.** Judge Wooten's order needs to be placed in the proper context. He had not decided *after Reiter* that the appropriate procedure would be to hear the trustee's claim first. Rather, in light of *Reiter*, Judge Wooten "ratified" his prior grant of summary judgment in favor of the trustee.

**5.** The name of claimant and the amount of undercharge and interest, if any sought; a copy of the original bill of lading and a copy of the original freight bill; a description of the goods shipped (if not fully and accurately described on the bill of lading); the quantity of goods shipped (if not accurately presented on the bill of lading); the point of origin and the point of destination (and points of stop-off for pickup and delivery, if pertinent); the classification of exception rating assigned the goods, in the case of class rates; the mileage from origin to destination (via stop-off points, if pertinent) in the case of mileage rates; the discount factor, if any, applied in the original billing compared with the discount factor, if any, applied in re-billing; the per-unit line-haul rate as originally billed compared with the per-unit line-haul rate as re-billed; the rate or charge for accessorial services, if any, originally billed compared with the rate or charge for accessorial services as re-billed; total shipment charges as originally

formation establishes the alleged unreasonable rate sought by a trustee, the same information will be required as part of a shipper's reparations action. Determining whether the applicable filed rate is unreasonable often will require "voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts." *Great N. Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922) (Brandeis, J.); *see also* Jaffe, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 132–133 (1965). As part of that process, the ICC will necessarily address an element of the Trustee's claim. Since the counterclaims must be referred to the ICC at some point in this proceeding, there is no reason for this Court to make determinations within the ICC's expertise.

■ As a final justification for determining his claims first, the Trustee argues that if his claims are not liquidated, he cannot protect the estate against shipper insolvency. Here, the Trustee is referring to the penultimate sentence in *Reiter* that described a "conceivabl[e]" scenario where the equities favor separate judgment for the trustee—a threat of shipper insolvency. Even then, the Court noted, the trial court could enter judgment but stay enforcement under FED.R.CIV.P. 62(h), provided that the shipper secured the judgment by, for example, depositing the amount of the judgment with the court. The Trustee's argument is too broad; merely staying the Trustee's claims does not deprive the estate of suitable protection. In those situations where the Trustee has a good faith concern about a shipper's solvency, the Trustee may petition this Court to either (1) vacate the stay and permit the prosecution of his claim to final judgment, or (2) condition the continuance of the stay as necessary to preserve the Trustee's claim. For now, however, the naked assertion that there is the "threat of insolvency" is insufficient.

As a separate ground for staying the Trustee's claim, Defendant Flygt argues that it has raised the defense that Lifschultz did not comply with ICC credit regulations, and that defense must first be decided by the ICC. The parties dispute whether non-compliance with credit regulations is a defense to collection of the filed rate. It may be that certain credit regulations were promulgated by the ICC to thwart the statutory mandate of collecting the filed rate. *Cf. Maislin*, above (ICC regulation deeming collection of filed rate an "unreasonable practice" ran afoul of statutory filed rate doctrine); *Overland Express, Inc. v. I.C.C. et al.*, 996 F.2d 356 (D.C.Cir.1993) (non-compliance with tariff regulation not defense to collection of filed rate; "draconian" regulation not directly and closely tied to statutory policy). It also may be that certain credit regulations are a valid exercise by the ICC. *Cf. Southern Pac. Transp. Co. v. Commercial Metals*, 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (non-compliance with credit regulations not a defense to payment of filed rate since regulations did not then so provide); *Security Services, Inc. v. K Mart Corp.*, 996 F.2d 1516 (3rd Cir.1993) (court held non-compliance with same tariff regulation at issue in *Overland Express* to constitute valid defense to trustee's collection action).

■ This Court believes it would be wasteful to engage in a comprehensive analysis of the credit regulations before the ICC determines which regulations, if any, have not been satisfied. *Compare Matter of Steve D. Thompson Trucking, Inc.*, 989 F.2d 1424, 1429 (5th Cir.1993) (court deferred ruling on validity of new ICC rule, Ex Parte No. MC–208, as it applied to trustee collection actions, until factual determinations of applicability are made). In those proceedings where non-compliance with the credit regulations has

billed compared with total shipment charges as re-billed; complete tariff authority (e.g. item number, page number, rule number, etc.) of specifically cited tariffs (all) used in the calculation of applicable rates and charges as original-

ly billed and as re-billed. The ICC comments that "[t]his information should be readily available to claimants since, without it, they cannot properly formulate their claims." Ex Parte No. MC–208, Appendix C, n. 1.

been raised, that issue, too, is within the primary jurisdiction of the ICC and should be determined concurrently with the unreasonable rate issue. *Compare Lifschultz Fast Freight, Inc. v. Nat'l. Mfg. Co.*, 804 F.Supp. 1059, 1064 (N.D.Ill.1992) (non-compliance with credit regulations is defense to collection action; court referred determinations of compliance to ICC). If the ICC determines that non-compliance bars the Trustee's claim, the parties likely will desire judicial review or enforcement of that determination. In that event, the Trustee will be free to pursue his argument that the credit regulations, as applied, are an impermissible extension of the ICC's authority.

## V. CONCLUSION

■ In *Reiter*, the Supreme Court substantially altered the landscape in these motor carrier bankruptcy proceedings. No longer is the trustee able to recover unpaid filed rates before offsetting claims for unreasonableness are decided, unless the court finds there to be no just reason to delay entry of separate judgments in favor of the trustee. There is such reason here. It has not been shown why the insolvency of the carrier in this case is not a good reason to delay entry of final judgment on the Trustee's claims. Further, because the shippers' counterclaims are in the nature of recoupment, deficiencies in the Trustee's claims will be screened by the ICC's preliminary review of the shippers' unreasonable rate complaints.[6] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) (Cardozo, J.).

Therefore, this Court will exercise its discretion to stay the Trustee's claims while appropriate proceedings are initiated with the ICC, for a period not to exceed one year without further order by this Court. An appropriate order will be entered.

## ORDER

**IT IS HEREBY ORDERED THAT:**

1. Defendants' motions for referral to the ICC and for a stay of the Trustee's claims in the referenced adversary proceedings are **GRANTED.** This Court finds that these proceedings collectively raise the following issues within the primary jurisdiction of the Interstate Commerce Commission: (a) whether the Debtor complied with ICC credit regulations and, if not, whether such non-compliance precludes the Trustee from the assertion of certain claims and (b) whether the applicable filed tariff rate that the Trustee seeks to collect is an unreasonable rate in violation of the Interstate Commerce Act.

2. Defendants in the above-captioned proceedings that have raised the issue of non-compliance with credit regulations or asserted a counterclaim for reparations arising from the assertion of unreasonable rates shall initiate appropriate proceedings with the ICC within thirty days of the entry of this Order. All other defendants raising these issues in proceedings brought in this bankruptcy case shall initiate appropriate proceedings within thirty days after receipt of notice of this Order. The Trustee is hereby directed to promptly send (a) notice of this Order and a copy of the accompanying Memorandum Opinion to the ICC and (b) notice of this Order to all other defendants who have raised either of the foregoing issues in their pleadings.

---

**6.** Several courts have required that a shipper make a threshold showing of unreasonableness before the issue will be referred to the ICC. *See e.g., Milne Truck Lines,* 970 F.2d at 570; *Atlantis Express, Inc. v. Standard Trans. Serv. Inc.,* 955 F.2d 529, 537–38 (8th Cir.1992). Contrary to *Reiter,* these cases also held the unreasonable rate issue to be a "defense" to the carrier's claim. Now that it is clear that the unreasonable rate issue is to be referred to the ICC as part of an independent reparations action, it is no longer clear that any threshold showing is required in the trial court prior to referral. Nor is it clear that a trial court should be making such a determination that itself seems within the primary jurisdiction of the ICC. Therefore, if the Trustee believes that the counterclaim cannot survive a motion to dismiss, it can raise that issue with ICC. *Compare ICA § 11701(b).*

3. Pending resolution of the foregoing issues by the ICC, the Trustee's claims are stayed until September 1, 1994.