182

In re LYONS TRANSPORTATION LINES, INC. f/d/b/a CTS Acquisition, Inc., f/d/b/a Lyons Group Inc., f/d/b/a Express Transport, Inc. f/d/b/a Transportation Brokers, Inc., Debtors.

Vedder J. WHITE, Trustee, Plaintiff,

v.

DEAN BROS. PUMP DIVISION OF MET–PRO CORPORATION, Defendant.

Vedder J. WHITE, Trustee, Plaintiff,

v.

SONWIL DISTRIBUTION CENTER, Defendant.

Vedder J. WHITE, Trustee, Plaintiff,

v.

CAMBRIDGE TOOL & MANUFACTURING COMPANY, INC., Defendant.

Bankruptcy No. 90–00768E.
Adv. Nos. 92–0069, 92–1514 and 92–1575.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 5, 1993.

PA, B. Scott Kern, Erie, PA, Daniel C. Sullivan, Oak Brook, IL, Stephen H. Hutzelman, Erie, PA, Joseph G. Bambrick, Jr., West Reading, PA, Steven C. Weiss, Chicago, IL, David S. Rzepecki, Erie, PA, Joseph Spiro, Erie, PA, for Various Shipper Defendants.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Lyons Transportation Lines, Inc. f/d/b/a CTS Acquisition, Inc., f/d/b/a Lyons Group, Inc., f/d/b/a Express Transport, Inc., f/d/b/a Transportation Brokers, Inc. filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on October 19, 1990. On January 24, 1991, the case was converted to a proceeding under Chapter 7. As used in this Opinion, the term "Debtor" shall mean Lyons Transportation Lines, Inc. Vedder J. White, Esq. was appointed as Trustee on January 25, 1991. Following Mr. White's untimely death, Gary V. Skiba, Esq. was appointed as successor Trustee and now prosecutes these actions.

Prior to its demise, the Debtor was a common carrier regulated by the Interstate Commerce Commission ("ICC"). Following the usual course in the bankruptcy of a trucking company, the Trustee hired an auditor, Motor Carrier Audit & Collection Co., to audit the Debtor's prior freight bills. The auditor determined that Lyons had billed shippers less than the full amount of freight charges prescribed by the Debtor's tariff rates on file with the ICC at the time of shipment.

The Trustee issued correction notices and made demand for payment of the "undercharges." Following the refusal of numerous shippers to make the additional payments, the Trustee commenced several hundred adversary proceedings which demand judgment against the shippers for the "undercharges."

In many of the undercharge cases initiated by the Trustee, the shipper/defendant has raised among other defenses the issue

---

Gary V. Skiba, trustee and atty. pro se.

Harry D. Martin, Thomas J. Minarcik, and Edward J. Betza, Erie, PA, Brian Troiano, Washington, DC, for trustee.

John A. Pillar, Pittsburgh, PA, George C. Pezold, Huntington, NY, William A. Gray, Pittsburgh, PA, Michael S. Janjanin, Erie,

of "rate reasonableness" and asserted that the adversary proceedings must be referred to the ICC for determination. Each of the undercharge cases involves slightly different factual considerations. The within adversaries in which the Defendants have raised the issue of rate reasonableness and have filed motions for stay and referral to the ICC are representative of the issues that are common to most of the undercharge cases before this Court.

The three cases can be described as follows:

*(1) White v. Dean Bros. Pump,* Adversary No. 92-0069

The undercharge question in this case is what has been termed the "gap issue." The Debtor published a tariff which granted Dean Bros. Pump a 30% discount effective as of September 15, 1990. The Debtor provided services prior to September 15, 1990 on which the Debtor billed and Dean Bros. Pump paid a 30% discounted rate. The undercharges which the Trustee seeks to recover are the 30% discount amounts allowed during this "gap" period, the period prior to the effective date of the tariff.

*(2) White v. Sonwil Distribution Center,* Adversary No. 92-1514

The undercharge issue in this case is what has been termed the National Motor Freight Classification or "NMFC issue." Class rates are based on the commodity classification system set forth in the NMFC, a tariff published under the auspices of the American Trucking Associations, Inc. on behalf of participating motor carriers. Some carriers independently publish their own class rate tariffs, which are generally similar in format and in the rate levels to the NMFC. The starting point to determine the freight charge for a shipment is to identify the commodity and determine its class rating from the NMFC. The issue can be described in simple terms: The Debtor published a discount tariff for the shipper. It applied to commodities "A," "B" and "C." The shipper shipped commodities "X," "Y" and "Z." The issue is whether the discount tariff should apply to the shipments of commodities "X," "Y" and "Z."

*(3) White v. Cambridge Tool & Manufacturing Company, Inc.,* Adversary No. 92-1575

The undercharge issue in this case is what has been termed the "loading allowance issue." The Debtor published a tariff which granted an allowance to Cambridge Tool for loading shipments into the Debtor's trailers. The Trustee alleges that Cambridge Tool failed to present a claim for payment of the loading allowance to the Debtor as required by the tariff. Therefore, the Trustee alleges that the loading allowances which the Debtor paid to the shipper were unauthorized and are subject to recovery.

The underlying issue in each case is "rate reasonableness"—whether the rates which the Trustee seeks to apply are unreasonable and whether these matters should be referred to the ICC for a determination of rate reasonableness or whether the Trustee's claims should be adjudicated here and, if appropriate, judgment entered against the defendants with the Defendants subsequently proceeding on the issue of rate reasonableness before the ICC.

We fixed an argument on the within matters and realizing that the resolution of these matters would affect all similar adversary proceedings, invited attorneys in similar matters to file Amicus Curiae Briefs and to participate in the Argument. After consideration of the pleadings in these matters, Briefs, Briefs of Amicus Curiae and the Arguments of Counsel, we now render our decision.

### Positions of the Parties

It is the Trustee's position that the tariff applicability issues are separate and distinct from the rate reasonableness issues and should be resolved by this Court prior to referral of the rate reasonableness issue to the ICC. The Trustee also asserts that a shipper cannot obtain referral to the ICC merely upon the bald allegation of an unreasonable rate, but rather must make

some factual allegations of unreasonableness. The Trustee further asserts that referral to the ICC is inappropriate because the ICC is biased towards shippers and that these cases will disappear into a "black hole." Also mentioned is the question of whether the rate reasonableness issue may be raised as a defense or whether it must be raised as a counter-claim.

The shippers assert that a stay and referral to the ICC is appropriate because of the intertwined issues of tariff applicability and interpretation, classification of commodities, tariff publication practices, and rate reasonableness all of which are within the particular expertise of the ICC; that the issue of rate reasonableness must be referred to the ICC and that each underlying issue involves rate reasonableness so that the entire matters should be referred.

### Discussion

■■■ The Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*, requires common carriers, such as the Debtor, to publish (file with the ICC) tariffs which state the rates that the carrier charges its customers, the shippers. 49 U.S.C. § 10762. The carrier must charge and the shipper must pay the published rate. 49 U.S.C. § 10761. This precludes the parties from agreeing to a lesser rate. A trustee for a bankrupt carrier may recover the filed rates even though the carrier had earlier agreed to accept and did accept a lesser rate. *See Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). The "filed rate doctrine" is strictly enforced. *Id.*

■■■ However, the Interstate Commerce Act requires also that the filed rates be reasonable. 49 U.S.C. § 10701. A published rate that is unreasonable is unenforceable. *See Reiter v. Cooper,* ⸺ U.S. ⸺, ⸺, 113 S.Ct. 1213, 1219, 122 L.Ed.2d 604 (1993); *Maislin,* 497 U.S. at 128, 110 S.Ct. at 2767. The Trustee concedes that rate reasonableness is an issue for determination by the ICC. *See Great Northern Ry. Co. v. Merchants' Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922). The Trustee asserts,

however, that this Court should proceed with a determination on the underlying undercharge claims and the shippers can *subsequently* seek a determination of rate reasonableness before the ICC. This course of action is permissible if we make "an express determination that there is no just reason for delay." *Reiter,* ⸺ U.S. at ⸺, 113 S.Ct. at 1221.

■ We are unable to make such a determination. The fact that the Debtor is an insolvent party weighs against the granting of a separate judgment. *Id. See also Vedder J. White, Trustee for Lyons Transportation Lines, Inc. v. Mack Trucks, Inc.,* Civil Action No. HAR 92–2922, 1993 WL 500780 (D.Md. Sept. 15, 1993).

Further, it is probable that the Trustee will be able to make out a prima facie case for its claims—the Defendants paid less than the applicable filed tariff rate. Under *Maislin,* the Trustee is entitled to recover the difference. Even if that portion of the matter was resolved, the ICC must still make a further determination as to the defenses and counterclaims which will involve many of the same factual determinations. In the "gap" cases, the question is whether the undiscounted rate that the Trustee seeks to impose during the "gap period" is reasonable. In the "NMFC" cases, the question is whether the undiscounted rate for the commodity shipped is reasonable and in the "loading allowance" cases, the question is whether the rate without the allowance is reasonable. Thus, the intertwined issues of tariff applicability and interpretation, and the reasonableness of the rates which the Trustee seeks to impose must be heard by the ICC in any event.

As part of the proceeding before the ICC, it will necessarily address the elements of the Trustee's claim. Because the reasonableness issue is so intertwined with a determination of which tariff rate applies, there is no reason for this Court to make initial determinations on matters which are within the ICC's area of expertise. For this reason, the Trustee's suggestion that we go forward with its claims and enter

separate judgment is declined. The question of which rate to apply will also be referred to the ICC.

■ The Trustee asserts that prior to the granting of a stay, the Defendants must do more than make an unsupported allegation of rate unreasonableness. We think the fact that the Debtor itself billed and accepted payment of the discounted rates provides support for the rate unreasonableness allegation. Also, our review of the adversary proceedings brought by the Trustee reveals numerous Affidavits on behalf of various shippers which lead us to the general conclusion that the discounted rates which were charged by the Debtor were competitive with other carriers at the time. We think that the various Defendants would have little difficulty in presenting a threshold level of evidence to warrant referral and believe it unnecessary to have them jump this additional hoop. Further, it seems inappropriate for this Court to require a preliminary showing of rate reasonableness when that determination itself is with the primary jurisdiction of the ICC. *Lewis v. Fuller*, 1993 WL 244992 (D.Kan.1993); *In re Lifschultz Fast Freight Corp.*, 157 B.R. 397 (Bankr.N.D.Ill. 1993). If the Trustee believes that the defenses raised by the shippers cannot survive a motion to dismiss, the Trustee can raise that issue with the ICC. *Id.*

■ It is immaterial whether the Defendant has raised "rate reasonableness" as a defense or as a counterclaim. *See Reiter v. Cooper*, — U.S. —, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *F.P. Corp. v. Ken Way Transp., Inc.*, 821 F.Supp. 1032 (E.D.Pa.1993). The rate reasonableness question relates to the same shipments for which the Trustee seeks to collect undercharges. Where the issue of rate reasonableness has been raised, whether by defense or by counterclaim, we will treat it as being properly designated.

Finally, we are aware of the Trustee's concern that the ICC may not promptly resolve these matters and of the Trustee's concern over the ICC's alleged "bias" towards shippers. The law in this area is rapidly evolving. During the time since the Trustee commenced most of these Complaints, the ICC issued its *Ex Parte* No. MC–208 decision which was subsequently held invalid by the Third Circuit of Appeals in *White v. United States*, 989 F.2d 643 (3d Cir.1993). The Supreme Court issued its *Reiter* decision in March, 1993. Awaiting these decisions has caused some delay in this Court and likely accounts for delay at the ICC. The ICC has worked to develop a methodology for evaluating "reasonableness." *Georgia Pacific Corp.—Pet. for Declar. Order*, 9 I.C.C.2d 103 (1992) ("Georgia Pacific I"). The ICC now has completed public notice and comment procedures on a decisional framework for rate reasonableness adjudications and has recently issued a comprehensive decision establishing its rate reasonableness methodology. *Georgia Pacific Corp.—Pet. for Declar. Order*, 9 I.C.C.2d 796 (August 2, 1993) ("Georgia Pacific II"). We trust that the ICC will be able to promptly move forward on these matters. In any event, the Trustee is not without recourse. If unjustifiable delays are encountered, the Trustee can seek to have the stay lifted and have the matter returned to this Court. As to the Trustee's claim of bias, should, in the Trustee's view, the ICC act in an arbitrary and capricious manner, decisions by the ICC, like the decisions of this Court, are subject to review. *See Delta Traffic Service, Inc. v. Mennen Co.*, 730 F.Supp. 1309 (D.N.J.1990), *aff'd*, 919 F.2d 134 (3d Cir.1990).

### Conclusion

■ This Court cannot "refer" a matter to the ICC because there is no referral mechanism in the Interstate Commerce Act. Instead, it is appropriate to stay the proceedings in this Court in order to give the shipper a reasonable opportunity to apply to the ICC for a ruling. *Reiter*, — U.S. at —, n. 3, 113 S.Ct. at 1220, n. 3; *Lewis v. Shepard's McGraw–Hill, Inc.*, 829 F.Supp. 348 (D.Colo.1993).

Where the Trustee's Complaint asserts a separate Count for the collection of accounts receivable when a shipper has failed to pay an open invoice, we will direct that

proceedings on that Count continue in this Court.

Further action in this Court will be stayed to give the shippers a reasonable opportunity to apply for and obtain from the ICC an administrative ruling as to all issues concerning whether the Trustee is entitled to collect the asserted undercharges which the Trustee seeks to impose. Appropriate orders will be entered.

## ORDER

This 5 day of October, 1993, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. Adversary Proceeding No. 92–0069 is hereby STAYED pending final resolution by the Interstate Commerce Commission under the doctrine of primary jurisdiction of all issues concerning whether the Plaintiff is entitled to collect the asserted freight undercharges.

2. The Defendant shall, within 60 days of the date of this Order, commence by Complaint or other proceeding a reference to the Interstate Commerce Commission for such determination with notice to this Court of such filing.

3. The Clerk of this Court, upon receipt of notice that the Defendant has commenced proceedings with the Interstate Commerce Commission shall mark the above case closed. Nothing contained in this Order shall be considered a dismissal or disposition of this matter, and should further proceedings in it become necessary, either party may initiate it in the same manner as if this Order had not been entered.

## ORDER

This 5 day of October, 1993, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. Adversary Proceeding No. 92–1575 is hereby STAYED pending final resolution by the Interstate Commerce Commission under the doctrine of primary jurisdiction of all issues concerning whether the Plain-

tiff is entitled to collect the asserted freight undercharges.

2. The Defendant shall, within 60 days of the date of this Order, commence by Complaint or other proceeding a reference to the Interstate Commerce Commission for such determination with notice to this Court of such filing.

3. The Clerk of this Court, upon receipt of notice that the Defendant has commenced proceedings with the Interstate Commerce Commission shall mark the above case closed. Nothing contained in this Order shall be considered a dismissal or disposition of this matter, and should further proceedings in it become necessary, either party may initiate it in the same manner as if this Order had not been entered.

## ORDER

This 5 day of October, 1993, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. Counts II and III of the Complaint in Adversary Proceeding No. 92–1514 are hereby stayed pending final resolution of Count III by the Interstate Commerce Commission under the doctrine of primary jurisdiction of all issues concerning whether the Plaintiff is entitled to collect the asserted interstate freight undercharges.

2. The Defendant shall, within 60 days of the date of this Order, commence by Complaint or other proceeding a reference to the Interstate Commerce Commission for such determination with notice to this Court of such filing.

3. An evidentiary hearing is fixed for 9:30 a.m., January 5, 1994 in Courtroom C, U.S. Courthouse, Erie, Pennsylvania, to consider Count I of the Complaint which relates to accounts receivable. One hour has been reserved on the Court's calendar.